71 N.J. Super. 120 (1961)
176 A.2d 488
SABINA PAWLOWSKI, PLAINTIFF-RESPONDENT,
v.
NICHOLAS MARINO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1961.
Decided December 14, 1961.
*121 Before Judges CONFORD, FREUND and LABRECQUE.
*122 Mr. Peter J. Devine, Jr., argued the cause for appellant (Mr. Michael Patrick King, on the brief; Messrs. Kisselman, Devine, Deighan and Montano, attorneys).
Mr. Francis E. Gazdzinski argued the cause for respondent.
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a final judgment of the Superior Court, Law Division, rendered in favor of the plaintiff, Sabina Pawlowski, in the amount of $23,000 for personal injuries and property damage. The trial under review was held pursuant to our earlier remand of this matter for a new trial as to damages only. Pawlowski v. Marino, 59 N.J. Super. 511 (App. Div. 1960).
This case has been tried on three different occasions. At the first trial there was a mistrial. At the second trial, held in June 1959, the jury returned a verdict of $20,000 in damages for plaintiff's personal injuries and property damage. We reversed the judgment on the ground that the verdict was grossly excessive. The third trial resulted in the verdict for $23,000, presently being challenged. On the motion for a new trial, the trial judge declined to disturb the verdict. He reasoned that if the jury believed plaintiff's medical testimony and disbelieved defendant's, it could properly have arrived at its verdict.
All the details relating to the automobile accident that is the basis of this action are set forth in our earlier opinion (59 N.J. Super. 511). Since defendant has conceded liability, there is no need to repeat the underlying facts. The only real issue is whether the verdict is excessive and, if so, what remedial action should be taken. This requires a consideration of the medical proofs.
The nature of the medical proofs submitted at the 1959 trial is indicated by our previous opinion and need not be repeated here.
*123 On March 25, 1960, about a month after we reversed the 1959 judgment, plaintiff consulted Dr. Stanley L. Brown for the first time and informed him of pains in her lower back, running into her right leg, and of other subjective complaints generally worse than those she had previously reported to her other physicians. Aside from Dr. Brown's testimony, the basic proofs concerning disability and injury were virtually the same in both trials.
Dr. Brown stated, as had Doctors Milnamow and De Palma, that the subluxation of the cervical spine was permanent in character, although minimal. But Dr. Brown added that Miss Pawlowski was also suffering from pains in her lower back which were causally connected with the automobile accident. He described her condition as spondylolisthesis, being the forward displacement of the fifth lumbar or the first sacral vertebrae. On cross-examination, however, he qualified his opinion as to the cause of her low back pain by admitting that if he were given the hypothesis that plaintiff did not complain about low back pain for a period of one year following the accident, he would say the back complaint was not connected with the accident.
Our study of the record in this regard leads us to conclude that there is practically no reliable justification for believing that plaintiff told any of the doctors who examined her for more than two years after the accident that she had any pain in her lower back. In this connection, we note the testimony of one of defendant's medical witnesses, Dr. George Grenhart, who had examined Miss Pawlowski on January 21, 1958, October 6, 1958 and on September 15, 1960, and who agreed with Dr. Brown that she was suffering from spondylolisthesis. However, he pointed out that 95% of such cases are congenital in origin. From plaintiff's medical history, his examination of her X-rays and his personal observations, he concluded that plaintiff's spondylolisthesis was "definitely congenital."
*124 The gravamen of defendant's argument is that the completely new claim of low back injury is false. From that it is argued that the amount of the verdict must have been to a large degree influenced by the introduction of an exaggerated claim of injury to the lower back, over and above the injury to the cervical spine complained of at the previous trial, and, the verdict being thus clearly excessive, defendant was entitled to another trial on the issue of damages.
Although defendant has made an impressive factual demonstration of the lack of good faith in the low back injury claim, we cannot say as a matter of law that this after-discovered infirmity is so completely lacking in substance as to justify a conclusion that the trial court should have stricken all the proofs relating to that injury at the trial, as was requested by defendant's motion. The plaintiff was at least entitled to have the jury pass upon her credibility on this issue, notwithstanding the heavy weight of the credible proofs to the contrary. Franklin Discount Co. v. Ford, 27 N.J. 473, 489 (1958); Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 62 A.L.R.2d 1179 (1956); McCray v. Chrucky, 66 N.J. Super. 124, 130 (App. Div. 1961).
On the motion for a new trial, however, a court has greater latitude in which to correct a manifest denial of justice. It is then required to set aside the verdict as against the weight of the evidence if it clearly and convincingly appears that the verdict resulted from mistake, partiality, prejudice or passion. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955); Fisch v. Manager, 24 N.J. 66, 80 (1957); R.R. 1:5-3(a); R.R. 4:61-1(a). A greater degree of insufficiency in the proofs is required to take a case from the jury or to direct a verdict than would justify the judge's legal discretion in setting aside a verdict as against the weight of the evidence. In the latter case, he is necessarily required to weigh the evidence. Franklin Discount *125 Co. v. Ford, supra (27 N.J., at p. 490); Hager v. Weber, 7 N.J. 201, 210 (1951).
The only medical proof that plaintiff's low back injury was caused by the accident was Dr. Brown's testimony. This was substantially qualified by his admission that the pain must have begun at least within one year after the accident to support such a finding. We are convinced from a careful review of all the evidence that plaintiff made no complaint to her doctors of pain in the lower back during this period of time. She never unequivocally stated that she made any such complaint. If her back condition was as painful as she claims, it is extremely, if not conclusively, unlikely that she would not have informed her doctors of this subjective complaint at the time she complained of her other pains. We, therefore, find ample justification for the conclusion that any part which a finding of lower back injury might have played in the jury's determination as to plaintiff's overall injuries was against the clear weight of the evidence and properly subject to judicial discount.
As already indicated, the rest of plaintiff's case was substantially the same as at the 1959 trial. Her own physicians admitted that the subluxation was mild. Moreover, her original X-ray plates and a report to Dr. Milnamow from Dr. S. Samuel Tropea, who took those X-rays, as well as Dr. Tropea's failure to be produced as a witness, all raise a doubt as to whether there was any subluxation at all. Defendant produced two qualified physicians to rebut this particular claim. Dr. Grenhart believed that "the possibility of a very minimal subluxation at this level cannot be definitely excluded," while Dr. Philip D. Gilbert, a radiologist, found "no evidence of any subluxation of the cervical vertebrae." Basically, then, this verdict is infected with the same insufficiencies found on the prior appeal, compounded by plaintiff's apparent attempt to build a stronger case in order to buttress the weakness pointed out in our previous opinion. We are convinced that this verdict, too, resulted from mistake, passion, partiality or prejudice. Cf. Marty v. *126 Erie R. Co., 62 N.J. Super. 458, 468-469 (App. Div. 1960), certif. denied 33 N.J. 387 (1960).
Defendant has urged as a ground for reversal that the court committed prejudicial error when it failed to charge that the non-production of plaintiff's radiologist, Dr. Tropea, and the lack of any explanation for his absence, permitted the jury to infer that his testimony would have been unfavorable to plaintiff's case. Certainly there was some justification for such a charge, but its omission is not to be considered prejudicial under the circumstances. While this inference can be made in a proper case, Michaels v. Brookchester, Inc., 26 N.J. 379, 391-392 (1958), it may not be drawn where testimony would be comparatively unimportant, cumulative, or inferior to testimony already before a jury. O'Neil v. Bilotta, 18 N.J. Super. 82, 86 (App. Div. 1952), affirmed 10 N.J. 308 (1952); 2 Wigmore, Evidence (3d ed. 1940), § 287. Dr. Tropea did not treat plaintiff, he merely had taken her X-rays. A diagnosis of subluxation does not depend entirely on a reading of the X-ray plates, although that is important, but also requires a complete examination of the patient. This physician's testimony is not then to be considered crucial. Defense counsel was free to point out to the jury the failure to produce Dr. Tropea, and to suggest that if he had been called his testimony would probably have been unfavorable.
Defendant contends that error was committed when the trial judge permitted plaintiff to produce testimony concerning the probable necessity for, and expense of, a future operation to correct the condition of the cervical spine. Defendant claims that he was alerted to no such contention either by answers to uniform personal injury interrogatories, R.R. 4:23-3(b), Form 9A, or at the pretrial conference. We are not satisfied that the interrogatories sufficiently and clearly specified the subject of future treatment or surgery to justify excluding the proofs in question. Furthermore, the defendant was informed of the alleged low back injuries and he could have demanded answers to additional interrogatories *127 to determine what further medical treatment was necessary, if any, in relation thereto.
Inasmuch as this case has already produced two verdicts and one mistrial, we prefer not to reverse again, but rather to use a remittitur. Our power to reduce the amount of the verdict is well settled. Hager v. Weber, supra (7 N.J., at p. 213); Moran v. Feitis, 69 N.J. Super. 531, 541 (App. Div. 1961); R.R. 1:5-3(a) made applicable to the Appellate Division by R.R. 2:5. Accordingly, since we regard the verdict as sufficiently excessive to warrant reduction, we direct that, unless plaintiff consents to a reduction of the verdict and judgment to the sum of $15,000, the verdict and judgment will be set aside and a new trial ordered as to damages. If she consents the judgment will be reduced as stated. Rommell v. United States Steel Corp., 66 N.J. Super. 30, 35 (App. Div. 1961), certif. denied 34 N.J. 580 (1961); Marty v. Erie R. Co., supra (62 N.J. Super., at p. 467).
Judgment accordingly; no costs on this appeal if plaintiff consents to the reduction.