102 N.J. Super. 13 (1968)
245 A.2d 208
EDWIN FREDERICK WENNER, PLAINTIFF-APPELLANT,
v.
McELDOWNEY & COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1968.
Decided July 11, 1968.
*16 Before Judges CONFORD, LABRECQUE and FULOP.
Mr. William G. Freeman argued the cause for plaintiff-appellant, Edwin Frederick Wenner (Messrs. Freeman & Freeman, attorneys).
Mr. Michael P. King argued the cause for defendant-respondent, McEldowney & Company (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
FULOP, J.S.C. (temporarily assigned).
This is an appeal from a judgment in favor of defendant entered by the trial court notwithstanding a jury verdict in favor of the plaintiff for damages in the sum of $30,000.
The plaintiff, Edwin Wenner, was hired by Belford Seabrook at an hourly wage to repair the roof of a carriage house situated on a farm owned by the defendant McEldowney & Company, a New Jersey Corporation. Plaintiff alleges that when he reported to do the work Mr. Seabrook directed that the work be done under the supervision of his stepson, Craig McKinley. When plaintiff got up on the roof, McKinley allegedly negligently pushed a piece of wire on the end of a broomstick through an opening in the roof or *17 under a shingle in such manner as to dislodge the plaintiff and cause him to fall to the ground. Plaintiff was injured.
Although plaintiff in his pleadings alleged other acts of negligence on the part of the defendant corporation, his proof was confined to the act of McKinley above referred to. Plaintiff contended that he was employed by Seabrook individually but that McKinley was acting for the defendant corporation. It was essential to plaintiff's recovery to establish that McKinley was the servant of the corporation and that plaintiff was not, for if they were both employed by the same employer plaintiff's remedy against the employer was confined to recovery under the Workmen's Compensation Act. R.S. 34:15-7, 8 and 9. See Freppon v. Hittner, 91 N.J. Super. 9 (App. Div. 1966) and Mazzuchelli v. Silberberg, 29 N.J. 15 (1959).
At the end of the plaintiff's proof, defendant moved for involuntary dismissal. The motion was denied. At the end of the entire case the defendant moved for judgment in its favor. The trial judge reserved decision on this motion and submitted the case to the jury. The jury was asked to answer five interrogatories and render a general verdict as provided in R.R. 4:50-2. In answers to the interrogatories the jury found that McKinley was acting in the matter as the employee of the defendant Corporation and not as the employee of Seabrook and that Wenner and McKinley were not working for the same employer. The jury also found McKinley negligent and plaintiff not guilty of contributory negligence, and rendered a general verdict for the plaintiff in the sum of $30,000.
After the verdict, defendant orally renewed its motion for the disposition of the case in its favor by the court as a matter of law. The court again reserved decision. The trial was concluded on October 9, 1967. By letter dated October 17, 1967, the trial judge granted judgment in favor of the defendant notwithstanding the verdict. The court found that taking the evidence in the light most favorable to the plaintiff, it established that Wenner and McKinley were employed *18 by the same employer whether the employer was Belford Seabrook individually or McEldowney & Company or both of them jointly and that there was no basis in the evidence warranting the jury finding that Seabrook employed Wenner individually and simultaneously employed McKinley on behalf of the corporation.
Plaintiff contends that it was error to enter judgment against him notwithstanding the verdict for the following reasons:
1. The trial judge had no power to enter judgment notwithstanding the verdict in the absence of a written motion as provided by R.R. 4:51-2(c).
2. R.R. 4:50-2 makes it mandatory that the judge enter judgment in accordance with the jury verdict where, as here, the answers to interrogatories given by the jury and the general verdict rendered by the jury are all consistent.
3. The verdict was supported by the evidence, there was a factual issue for the jury, and the court erroneously substituted its own appraisal of the facts for that of the jury.
As to the first point, plaintiff has misread the rule. R.R. 4:51-2(a) reads:
"(a) If a motion for judgment is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the verdict or within 10 days thereafter or if no verdict is returned, within 10 days after the jury's discharge. If the motion is denied and the case has been submitted to the jury, the motion may be renewed within 10 days after the verdict or the discharge of the jury. The court may enter judgment in accordance with the motion or, if the ends of justice so require, may order a new trial."
When the court denies the motion for judgment made during the trial, it may be renewed after verdict. Such renewal of the motion must be in writing, on notice. R.R. 4:51-2(c). But when the court does not deny the motion at the trial but reserves decision thereon, it may decide it either before the verdict or within 10 days thereafter without any action by the parties. The first sentence of R.R. 4:51-2(a) *19 clearly so intends. See Shaw v. Edward Hines Lumber Co., 249 F.2d 434 (7 Cir. 1957). If the motion is granted, the losing party may move as provided in R.R. 4:51-2(e).
The second point is based on the language of R.R. 4:50-2 which reads in part as follows:
"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers * * *"
The purposes of this rule are to require the jury to specifically consider the essential issues of the case, to clarify the court's charge to the jury, and to clarify the meaning of the verdict and permit error to be localized. See Nylander v. Rogers, 41 N.J. 236 (1963); Terminal Construction Corp., v. Bergen County, 18 N.J. 294, at headnote 15 (1955); Marchese v. Monaco, 52 N.J. Super. 474 (App. Div. 1958) certification denied 28 N.J. 565 (1959); Bleeker v. Trickolo, 89 N.J. Super. 502 (App. Div. 1965); Bree v. Jalbert, 87 N.J. Super. 452 (Law Div. 1965).
Nothing in this rule deals with the power of the court to grant a new trial or enter judgment notwithstanding the verdict. These powers are covered by other rules and the rules must be read together. It is neither practicable nor necessary for each rule to specify that it is subject to the provisions of other rules. R.R. 4:50-2 means that the court must "direct the entry of the appropriate judgment upon the verdict and the answers to interrogatories" unless the verdict is erroneous as a matter of law or should otherwise be vacated under the court's powers and as provided by other rules.
A verdict supported by interrogatories is no more conclusive than a general verdict. See Myers v. Reading Co., 63 *20 F. Supp. 817 (E.D. Pa. 1945), affirmed 155 2d 523 (3 Cir. 1946) reversed 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947); Gross v. Gross, 169 F.2d 199 (7 Cir. 1948). In 35B C.J.S. Federal Civil Procedure, § 1219 it is said:
"A motion for judgment notwithstanding the verdict may be granted where the jury's answers to certain interrogatories are false as a matter of law. The rules governing the construction of evidence for the purpose of determining a motion for judgment notwithstanding the verdict generally, discussed infra sec. 1224, apply to such a motion with respect to the jury's answers to interrogatories."
R.R. 4:51-2 granting the power to enter judgment contrary to a jury verdict was first adopted in 1958. It is modeled after Federal Rule 50(b). Poland v. Parsekian, 81 N.J. Super. 395, at p. 401 (App. Div. 1963) certification denied 41 N.J. 520 (1964). Both differ slightly from the common law motions non obstanto veredicto and in arrest of judgment. See Barron and Holtzoff (Wright), Federal Practice and Procedure, vol 2B, sec. 1079 and note 62; 1 Bradner, New Jersey Law Practice, secs. 401-405 (1940).
In a much criticized 1913 opinion it was held that a Federal Court had no power to enter judgment non obstanto veredicto in favor of a party who had not moved for a directed verdict at the trial. Slocum v. New York Life Insurance Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 (1913). However in Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935) the Supreme Court distinguished the Slocum case and held that in accordance with the practice at common law before the adoption of the Constitution, the court may reserve decision on a motion for directed verdict at the trial, take a verdict and enter a judgment notwithstanding the verdict if the court determines as a matter of law that the evidence was not sufficient to sustain the verdict. Federal Civil Practice Rule 50(b), as amended, provides that whenever a motion for a directed verdict is denied or for any reason is not granted, "the court is deemed *21 to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." The practice of granting judgment notwithstanding the verdict has been sustained repeatedly. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945 (1941); Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). See Barron & Holtzoff (Wright) op. cited, sec. 1077. Cf. Hager v. Weber, 7 N.J. 201 (1951).
In Shaw v. Edward Hines Lumber Co., 249 F.2d 434 (7 Cir. 1957) the court said:
"* * * there is no doubt but that one of the cogent reasons for the rule was the desire to permit the trial court to resolve any doubt as to the sufficiency of the evidence subsequent to the rendition of the verdict, thereby placing the case in such a posture that, in the event it should be concluded upon review that the court erred in directing a verdict, the original verdict may be reinstated without a new trial * * * It is clear that a court may expressly reserve decision on a motion for directed verdict * * * Indeed, various courts have recommended that trial courts reserve their decisions on such motions * * * This recommendation is made, not only for the purpose of avoiding unnecessary delay, but, in addition, to provide a procedure which gives the trial judge adequate opportunity properly to scrutinize the record and to make informed, considered rulings." (At pp. 436-437)
See Poland v. Parsekian (supra). In Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942) the Supreme Court affirmed a Court of Appeals decision reversing the trial court's failure to grant judgment non obstanto veredicto where the court found that the evidence established fraud without contradiction, qualification, or explanation.
In Stanolind Oil & Gas Co. v. Trosclair, 166 F.2d 229 (5 Cir. 1948) it was held proper to enter a judgment for the defendant non obstanto veredicto in an action based on the tort of an alleged agent where the evidence showed that the alleged agent was an independent contractor.
*22 In Ferrie v. D'Arc, 31 N.J. 92 (1959) the Supreme Court reversed the trial court and the Appellate Division and directed judgment to be entered for the defendant notwithstanding a plaintiff's verdict on the ground that the evidence established contributory negligence as a matter of law.
The granting of a judgment notwithstanding the verdict is governed by the same principles as the granting of a motion for judgment at the trial under R.R. 4:51-1, formerly designated a motion for a directed verdict. Tomaiuoli v. United States Fidelity & Guaranty Co., 75 N.J. Super. 192 (App. Div. 1962). Barron and Holtzoff (Wright) op. cited, sec. 1079; National Equipment Rental, Ltd. v. Stanley, 177 F. Supp. 583 (E.D.N.Y. 1959) affirmed 283 F.2d 600 (2 Cir. 1960). A judgment may be granted at the end of the trial or notwithstanding the verdict "Where the judge, by the application of the reasoning processes of the mind to the evidence adduced in the case may properly conclude that fair-minded men cannot honestly differ as to the conclusions to be drawn from the proofs" Franklin Discount Co. v. Ford, 27 N.J. 473, at p. 487 (1958); Kopec v. Kakowski, 34 N.J. 243 (1961).
The court has discretionary power to grant a new trial rather than to enter judgment and should do so if it appears that the party who obtained the verdict may be able to supply the deficiency in evidence, or may win on another issue not fully tried, or for some other reason justice so requires. R.R. 4:51-2(a); Neely v. Martin K. Eby Construction Co., supra; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); Weade v. Dichmann, Wright & Pugh, Inc., 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704 (1949).
A judgment may not be granted merely because the verdict is contrary to the weight of the evidence, although a new trial may be granted on that ground. Franklin Discount Co. v. Ford, 27 N.J. 473, at p. 490 (1958); Pawlowski v. Marino, 71 N.J. Super. 120, at p. 124 (App. Div. 1961). On a motion for a new trial the judge must weigh *23 conflicting evidence and may grant a new trial if it is so overwhelmingly in favor of one side against whom the verdict was rendered "as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality." Hager v. Weber, 7 N.J. 201, 210 (1951). "* * * on a motion for judgment the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor." Melone v. Jersey Central Power & Light Co., 18 N.J. 163, at p. 170 (1955).
In the light of these principles, we examine the evidence with respect to plaintiff's contention that he was employed by Belford Seabrook individually while Craig McKinley was employed by the defendant McEldowney & Company.
Belford Seabrook owned 56 out of 68 shares of the stock issued by the defendant corporation McEldowney & Co. The corporation had been formed by Seabrook and his wife to hold real property and it owned the property in Alloway Township where the accident happened. Seabrook was the president of McEldowney. Under an oral lease the corporation leased to Seabrook the house in which he lived together with the garage and carriage house. Adjoining farm lands were similarly leased. The rental arrangement was a bookkeeping matter. McEldowney & Co. was not known, had no credit and very little cash. Seabrook personally paid for all repairs and paid social security on any employees. He purchased materials on his own credit. The rent fixed was sufficient to cover the taxes and mortgage payments on the property. Seabrook charged the cost of repairs against the rent due to the corporation and when the rent was insufficient the excess was entered as an indebtedness of the corporation to Seabrook.
Seabrook collected rent from subtenants and tenants in two other houses owned by McEldowney and paid them over to the corporation. Rents from subtenants were credited against rent due from Seabrook to McEldowney.
*24 On August 5, 1962, plaintiff was employed by Seabrook to repair the roof on the carriage house. Plaintiff was to be helped by his stepfather. Seabrook agreed to pay Wenner $2.00 an hour for his work and $1.50 per hour for his helper. Seabrook purchased the material for the job on his personal credit.
When plaintiff and his stepfather came to do the work Seabrook directed that it be done under the direction of his stepson, Craig McKinley. McKinley did not live on the property but visited there. On August 5th he was there on a visit. He had occasionally on his visits done work around the place for Mr. Seabrook. He had never been employed by McEldowney or, for that matter, by Seabrook. Seabrook occasionally gave him small sums of money. McEldowney never paid McKinley any money.
As above stated the accident happened when plaintiff mounted the roof while Craig McKinley was inside the carriage house. Plaintiff's claim for damages is based solely on the negligence of McKinley which allegedly caused Wenner to fall from the roof. Plaintiff asserts that he was employed by Seabrook individually and the point is not disputed.
Plaintiff's contention that Craig McKinley was the servant of the defendant corporation is based upon evidence that McKinley knew that defendant owned the property, that he did odd jobs around the place, and that he undertook his part of the work or supervision of plaintiff's work upon the direction or request of Seabrook.
Plaintiff also contends that, although the lower part of the carriage house was rented to and used by Seabrook, the upper portion which was rented or sublet to Sullivan was not within the oral lease from McEldowney to Seabrook because the rent paid by the tenants was paid over to McEldowney and, beginning in September, 1962, when Seabrook left the country, it was not collected by Seabrook. We are satisfied that on August 5, 1962 the carriage house was a portion of the property rented to Seabrook and a part of it was sublet by him to Sullivan. However, it is immaterial whether or not Seabrook *25 was the tenant. He undertook to have the roof repaired and to pay for the work and materials.
Plaintiff was employed by Seabrook with no specification that he was to work for him individually or for the corporation. In the same conversation, Seabrook directed McKinley to work on the same job with no specification as to individual or corporate employment. McKinley was Seabrook's stepson, a member of his family. He had never been employed or paid by McEldowney on any prior occasion. Any money he had ever received was from Seabrook individually.
The burden of proof is upon the plaintiff to establish that he was injured by the tortious act of defendant's servant. The evidence utterly fails to support the plaintiff's position that his employment by Seabrook and McKinley's were made by Seabrook acting in different capacities. Any inference drawn from ownership of the property would apply equally to both.
We agree with Judge Heine that there was no evidence in the case from which fair-minded men could conclude that McKinley was acting as a servant of the defendant when he allegedly committed the tort. The case was fully presented and the interest of justice would not be served by a new trial.
The judgment of the Law Division is affirmed.