**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1256-23

S.M. o/b/o H.M.,

    Plaintiff-Respondent,

v.

BOARD OF EDUCATION OF THE
TOWNSHIP OF MONROE IN THE
COUNTY OF MIDDLESEX, ROBERT
GOODALL, ANTHONY GAMBINO
and DANIEL LEE,

    Defendants-Appellants,

and

J.H., S.H., and A.H.,

    Defendants.

_____

Argued October 8, 2025 – Decided May 18, 2026

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2756-17.

William Bloom argued the cause for appellants (Methfessel & Werbel, attorneys; William Bloom, on the briefs).

R. Armen McOmber argued the cause for respondent (McOmber McOmber & Luber, PC, attorneys; R. Armen McOmber, of counsel and on the brief; Austin B. Tobin, on the brief).

PER CURIAM

Defendant Monroe Township Board of Education ("Board") appeals from an August 11, 2023, order denying its motion for a new trial. The underlying dispute involved allegations that plaintiff H.M.,[1] a student in the Board's district, was subjected to harassment based on his sexual orientation by another student, J.H., that escalated into a physical altercation in a school locker room. Following a lengthy charge conference, the trial judge crafted a single jury question to allow the jury to consider the plaintiff's claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -50. The jury returned a verdict in favor of plaintiff and awarded damages. The trial court denied defendant's request for a new trial. We affirm.

---

[1] We use initials to protect plaintiff's and minors' privacy. See R. 1:38-3(a)(2).

I.

Plaintiff sued the Board, Robert Goodall, Anthony Gambino, and Daniel Lee ("Board defendants"), J.H. (a fellow student) and his mother S.H. [2] Plaintiff asserted causes of action against the Board defendants for hostile classroom environment and retaliation in violation of the NJLAD, negligence, negligent supervision, negligent training, and intentional infliction of emotional distress. Plaintiff's claims against J.H. and S.H. included assault, battery, and intentional infliction of emotional distress. Dispositive motion practice in February 2021 reduced the number of claims presented at trial to: hostile classroom environment; gender/sexual orientation discrimination; and negligence allegations. Trial began in May 2021.

The evidence revealed that plaintiff and J.H. attended Monroe Township schools together from sixth through tenth grade. H.M. encountered repeated harassment from J.H., beginning in middle school, such as physical intimidation, derogatory slurs including being called "gay" and "f****t," and isolated incidents of assault. H.M. complained frequently to the school's staff. His mother corroborated his testimony, stating that he spoke to her on several

---

[2] At the time the complaint was filed, plaintiff H.M. and defendant J.H. were minor children. By the time of trial in May 2023, both plaintiff and defendant were adults.

A-1256-23

occasions about J.H.'s harassment throughout middle school. She testified that she addressed J.H.'s harassment of her son to his math teacher during parent-teacher conferences, and in response, the teacher acknowledged the school was aware of the harassment because it often occurred during class. The school never tried to remediate the situation.

The harassment persisted into high school. In tenth grade, both students were enrolled in driver's education and gym classes. J.H.'s harassment escalated. He threw objects at plaintiff, verbally abused him, and physically assaulted him. J.H. and his friends would bar plaintiff from entering class, saying "gay people aren't allowed in the classroom."

A physical altercation between plaintiff and J.H. occurred in the gym locker room in November 2015. At that time, J.H. directed homophobic epithets at plaintiff and plaintiff's friend. Conflicting testimony was presented as to the circumstances and precipitating actions. However, the exchange was captured on cell phone video and was shown to the jury at trial.

The video begins with plaintiff on his knees smiling at J.H., offering oral sex to him and asking him to expose his penis. In response, J.H. repeatedly asked plaintiff to stop, becoming more visibly agitated, and warning that if plaintiff continued, J.H. would hit him. Plaintiff repeated his statements as

J.H. came closer to him. J.H. then punched plaintiff several times in the face. Other students separated the two. However, after J.H. was pulled to the other side of the room, plaintiff stood up and moved towards J.H. to re-engage in the altercation. The recording shows J.H. punching plaintiff who subsequently fell over a bench onto the ground. Notably, no teaching staff were present in the locker room during the incident.

In addition to other fact and expert witnesses, plaintiff called Edward Dragan, Ed.D., who opined on applicable standards of care in school settings. Dr. Dragan concluded that deficiencies in the Board's response constituted a "major breach" of its professional duty. Dr. Dragan further emphasized the school's awareness of J.H.'s problematic history, as corroborated by evidence of disciplinary infractions dating back several years, including bullying, bias incidents, and sexual harassment. School principal Robert Goodall testified that he was not informed of J.H.'s disciplinary background.

After each party rested, the trial judge convened a charge conference that was held over two days in May 2023. Plaintiff submitted a proposed charge fashioned from the New Jersey Model Civil Jury charges, including the NJLAD-based claims, the negligence causes of action, and the customary instructions regarding damages, the burden of proof and, the roles of the judge

A-1256-23

and jurors. Defendants initially objected to the jury charge but, according to plaintiff, later withdrew the objection in writing.[3]

Plaintiff prepared a draft jury verdict form that, in addition to negligence-based claims, included a specific section asking the jury to consider the following three questions about plaintiff's NJLAD claims:

1. Do you find that [plaintiff] was subjected to discrimination and harassment at the Monroe Township High School?

    . . . .

2. Do you find that [plaintiff] suffered emotional distress as a result of the discrimination and harassment?

    . . . .

3. What amount of money do you find [plaintiff] is entitled to for emotional distress as a result of the discrimination and harassment?

    . . . .

Defendants objected to these questions and alternatively requested these seven be presented to the jury:

1. Has [p]laintiff proved that the claimed harassment against him by [J.H.] actually occurred?

    . . . .

---

[3] The record before us does not include that correspondence.

A-1256-23

2. Has [p]laintiff proved that the harassment occurred because of perceived sexual orientation?

. . . .

3. Has [p]laintiff proved that [ ] defendant Monroe Township Board of Education knew or should have known of the harassment and failed to take effective remedial measures to stop it?

. . . .

4. Has [p]laintiff proved that defendant Monroe Township Board of Education was negligent by failing to take reasonable steps to prevent the harassment from occurring?

. . . .

5. Has defendant Monroe Township Board of Education proved that it exercised reasonable care to prevent harassment in school by having in place appropriate policies and complaint mechanisms and that [p]laintiff negligently failed to take advantage of such policies and complaint mechanisms provided by defendant?

. . . .

6. Has [p]laintiff proved that the harassment was severe or pervasive enough to make a reasonable person believe that the conditions of his schooling were altered and that the school environment was hostile?

. . . .

A-1256-23

7. What amount of money would fairly and reasonably [compensate] [p]laintiff for pain, suffering, disability, impairment, and loss of enjoyment of life due to the harassment[?]

Defendants contend that a more robust set of interrogatories was necessary to break down the elements of the NJLAD and the prongs of defendants' affirmative defenses. After considering both submissions, and over the defendants' objection, the trial judge reduced the NJLAD issue to a single question:

1. Do you find [plaintiff H.M.] has proven by a preponderance of the evidence that the Monroe Township Board of Education defendants subjected [H.M.] to discrimination and harassment while a student at the Monroe Township High School?

The verdict sheet was presented to the jury along with a fifty-three-page jury charge.

The jury deliberated for seventy-five minutes and returned a unanimous verdict for plaintiff, and awarded $500,000 in compensatory damages.

The Board moved for a new trial, arguing the jury verdict sheet regarding the NJLAD claim was deficient and misleading and the jury verdict was against the weight of the evidence. The trial court denied the motion, stating:

A-1256-23

[T]he law is clear, that a [c]ourt's oral instruction is sufficient to convey an understanding of the elements. Here the jury charge -- here, the [c]ourt charged the jury in the applicable law, and even provided them with a copy of the jury charge, to reference while completing the verdict sheet.

Therefore, the jury was not confused and mislead about the elements of the claim they considered [on the verdict] before it was even presented to the jury. Therefore, the request for a new trial on a deficient verdict sheet is denied.

On the issue of miscarriage of justice, . . . [t]he [c]ourt finds that a miscarriage of justice did not occur here, as there was ample basis upon which the jury could rule in plaintiff's favor. [Defendants] argue[] that plaintiff's testimony was not credible. However, plaintiff's testimony was not the only factor presented and considered by the jury. And even if it was, jury verdicts can be based on the testimony of a single witness. The jury heard testimony from the plaintiff, teachers, administrators from the high school, and experts. They reviewed [J.H.'s] disciplinary record, that show[ed] a history of aggressive behavior, reports from [plaintiff's expert], and watched a video of the physical altercation that took place between the students.

. . . .

Since defendant[s] never actually put on their own case, the jury only had plaintiff's testimony, with nothing to refute it, other than defendant[s]' attempt to challenge [ ] plaintiff's truthfulness. The jury still must have determined that plaintiff was credible.

9

A-1256-23

In November 2023, the trial court entered a total judgment of $1,397,487.60, representing the jury award and attorney fees.

Defendants appeal the denial of its new trial motion, asserting that the trial court erred in denying his motion for a new trial because the jury verdict sheet was so deficient as to produce an unjust result.

II.

Rule 4:49-1 directs the court "shall grant [a] motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." The standard of review on appeal from a decision on a motion for a new trial is the "same governing the trial judge- whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011); see also Hayes v. Delamotte, 231 N.J. 373, 386 (2018); R. 2:10-1. "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in a 'clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22). A motion for a new trial is within the sound discretion of the trial court, and jury verdicts

are entitled to considerable deference.  Id. at 385; Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996).  As such, we must not only consider whether the trial judge misapplied discretion, but also scrutinize the record to ascertain whether a "miscarriage of justice" occurred.  Pressler & Verniero, Rules Governing the Courts of the State of New Jersey, cmt. 4 on R. 2:10-1 (2026).

It is axiomatic that jury verdicts should be set aside in favor of a new trial sparingly and only in cases of clear injustice.  Dutton v. Rando, 458 N.J. Super. 213, 223-24 (App. Div. 2019).  A jury's verdict, including an award of damages, is "cloaked with a 'presumption of correctness.'"  Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)).

The purpose of a verdict sheet and jury interrogatories, is "'to require the jury to specifically consider the essential issues of the case, to clarify the court's charge to the jury, and to clarify the meaning of the verdict and permit error to be localized.'"  Ponzo v. Pelle, 166 N.J. 481, 490-91 (2001) (quoting Wenner v. McEldowney & Co., 102 N.J. Super. 13, 19 (App. Div. 1968)).  They should be tailored to avoid confusion on the part of the jury.  Id. at 492.  "'The framing of [jury] questions in clear and understandable language cannot

be overemphasized.'" Id. at 491 (alteration in the original) (quoting Benson v. Brown, 276 N.J. Super. 553, 565 (App. Div. 1994)). Errors in interrogatories given to the jury are not grounds for reversal unless they were "misleading, confusing, or ambiguous." Id. at 490 (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 418 (1997)) (internal quotation marks omitted). "[I]n reviewing an interrogatory for reversible error, we . . . consider it in the context of the charge as a whole [because a]n accurate and thorough jury charge often can cure the potential for confusion that may be present in an interrogatory." Id. at 491.

Defendants argue that they are entitled to a new trial because the trial judge's use of a single, generalized interrogatory contained on the jury verdict sheet to consider defendant's liability under the NJLAD was improper and produced an unjust result. We disagree and conclude the trial judge's jury charge was sufficient to provide the jury with a sufficient understanding of the applicable law and each element plaintiff was required to prove and the verdict sheet properly articulated the proper legal standard to be assessed and permitted the jury to decide the issue accordingly.

12

A.

A cause of action exists under the NJLAD "for student-on-student harassment . . . if the school district's failure to reasonably address that harassment has the effect of denying to that student any of a school's 'accommodations, advantages, facilities or privileges.'"  L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381, 402 (2007) (quoting N.J.S.A. 10:5-12(f)(1)).  At the same time, however, "[a] school cannot be expected to shelter students from all instances of peer harassment," such as "isolated schoolyard insults or classroom taunts."  Id. at 402, 406.

To state a claim under the NJLAD against a school:

> an aggrieved student must allege [(1)] discriminatory conduct that would not have occurred "but for" the student's protected characteristic, [(2)] that a reasonable student of the same age, maturity level, and protected characteristic [(3)] would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and [(4)] that the school district failed to reasonably address such conduct.
>
> [Id. at 402-03.]

When developing this test, the L.W. Court decided not to adopt the U.S. Supreme Court's "deliberate indifference" standard for Title IX claims from Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 641 (1999).  Instead, it used

13

the <u>Lehmann</u> standard[4] to hold a school district is responsible for harassment if it knew or should have known about it, but did not take reasonable steps to stop it. <u>L.W.</u>, 189 N.J. at 390.

### B.

Although defendants did not ultimately object to the jury charges, they did object to the jury questions presented to assess plaintiff's NJLAD claim. Defendants argue the proffered questions prohibited the jury from considering each specific element of the NJLAD claim. Additionally, defendants argue the question was flawed because the trial judge did not follow Model Jury Charge 2.21. As a result, the verdict sheet asked only if defendant "subjected" plaintiff to harassment, instead of breaking the claim into specific elements. The trial judge overruled the objection and stated the single question would be adequate because the jury would receive a printed copy of the jury charge.

Following our review of the record, we conclude the trial judge's jury instruction was both thorough and accurate. The interrogatory presented to the

---

[4] The <u>Lehmann</u> standard, established in <u>Lehmann v. Toys R Us, Inc.</u>, 132 N.J. 587 (1993), is a four-prong test for hostile work environment sexual claims. The court held that to state a claim for hostile work environment sexual harassment, a plaintiff must allege: the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. <u>Lehmann</u>, 132 N.J. at 603-604.

14

jury properly encapsulated the elements of NJLAD in order to permit the jury to consider defendants' liability. It was not so misleading, confusing, nor ambiguous that it was clearly capable of producing an unjust result to require a new trial. R. 2:10-2.

In the instructions that accompanied the jury verdict sheet, the trial judge clearly, meticulously, and explicitly explained to the jury that it was required to find each element of plaintiff's NJLAD claim by a preponderance of the evidence to vest liability on defendants. The judge also gave a detailed explanation on each of the issues the jury had to decide in reaching the verdict on the NJLAD claim. Notably, defense counsel provided his own explanation on the applicable law and what it means in his closing statement with the purpose of aiding the jury in its deliberations.

Defendants' claim that the jury instruction was vague or misleading is belied by the record. The jury was encouraged to ask any questions that might arise during deliberations. They did not, and unanimously returned a verdict in plaintiff's favor. Additionally, following the announcement of the jury verdict, the court polled the jury and every member agreed with the decision.

In sum, when considered with the jury charge and instructions as a whole, the verdict sheet was not "clearly capable of producing an unjust

result." Ponzo, 166 N.J. at 490; R. 2:10-2. As a result, the verdict sheet did not constitute reversible nor plain error. Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 467-68 (2000). Therefore, defendants have not established "clearly and convincingly . . . that there was a miscarriage of justice under the law." R. 4:49-1(a).

To the extent we have not addressed any of defendants' remaining arguments, we conclude they lack sufficient merits to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1256-23