276 N.J. Super. 553 (1994)
648 A.2d 499
RANDALL S. BENSON AND STACY I. BENSON, PLAINTIFFS-APPELLANTS,
v.
ALLAN BROWN, NEW NORTH END TAVERN, AND IRWIN BROWN, DEFENDANTS-RESPONDENTS, AND ROBERT A. JELLINIK, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1994.
Decided October 18, 1994.
*555 Before PRESSLER, LANDAU and NEWMAN, JJ.
Emanuel S. Fish argued the cause for appellants (Emanuel S. Fish, attorney).
Isaac Henkoff argued the cause for respondents (Chapman, Henkoff, Kessler, Peduto & Saffter, attorneys for respondents, Mr. Henkoff, on the brief).
The opinion of the court was delivered by NEWMAN, J.S.C. (temporarily assigned).
Plaintiffs Randall S. Benson and Stacy I. Benson appeal from an adverse jury verdict on liability in an action brought against a bartender and tavern under the Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1 et seq. The thrust of the appeal is directed at the confusing, misleading and erroneous charge of the trial court as well as the inadequate and unclear verdict sheet provided to the jury.
The basic facts are as follows. In the early morning on March 30, 1990, Randall Benson (Benson) was waiting on the grass portion next to the curb in order to cross the street to his house in Maplewood. A car driven by defendant Robert A. Jellinik (Jellinik) hopped the curb and struck Benson causing serious injuries. Jellinik was 20 years old and intoxicated. Benson sued Jellinik, Jellinik's mother, the tavern where Jellinik later claimed to have been drinking, the tavern owner and the bartender at the tavern that night. Jellinik settled. The trial proceeded against the remaining defendants, the New North End Tavern, its principal shareholder, Irwin Brown and the bartender, Allan Brown, the owner's son.
Defendants did not dispute Benson's proofs as to injuries and damages, except as to the Portee claim by Benson's wife. Rather, *556 the defense contested liability, primarily on the ground that Jellinik was not served at the tavern on the night preceding and early morning hours of the day of the accident of March 30, 1990.
Benson's counsel argues that the multiplicity of errors in the jury charge and verdict form require a reversal. He enumerates the following litany of errors: (1) the trial judge used the term "apparently a minor" in his charge instead of "knew or reasonably should have known" that the person served was a minor as required by the statute; (2) the trial judge did not give an appropriate ultimate outcome charge; (3) the trial judge did not state that the tavern would be negligent as a matter of law if it was determined that the server knew or reasonably should have known that Jellinik was a minor; (4) the trial judge improperly charged the jury on the allocation of negligence between Jellinik and the tavern; (5) the trial judge improperly commented on Benson's counsel's closing argument; (6) the trial judge failed to separate jury question one; (7) the trial judge failed to instruct the jury to disregard prior versions of jury interrogatories after corrections were made; and (8) the trial judge erred by having the jury foreperson make corrections to a copy of jury interrogatories. Counsel for plaintiff argues that the errors alleged, either singly or in combination, call for a reversal. We agree that the charge was prejudicially erroneous and reverse.
In the charge to the jury, the trial judge first instructed them as to the tavern's liability:
Plaintiff contends that at the time the alcoholic beverage was being served, Robert Jellinik was visibly intoxicated, or was known or reasonably should have been known to be a minor. In this charge, I will use the phrase visibly intoxicated to mean the state of intoxication accompanied by a perceptible act, or series of acts which present clear signs of intoxication. An apparent minor to mean a minor as defined by our statutes, to be a person under the age of 21. If you find that the defendant Tavern and its bartender served or permitted to serve  to be served alcoholic beverages to a person who was visibly intoxicated or was an apparent minor at the time he was served, then you will find  must find the defendants were negligent.
Benson's counsel objected to the use of "apparent minor" instead of the "knew, or reasonably should have known, ... was a minor" *557 language found in N.J.S.A. 2A:22A-5b and Model Jury Charges, Civil 5.39. The trial court later responded by explaining to the jury as follows:
I don't believe I gave you any help or direction in terms of how you determine the phrase "apparently a minor". I think the best way to say it is, is that the charge against the defendants, the Tavern owner and the bartender, is negligence. It's negligence in serving and, therefore, the standard that's applied is the standard of a reasonably prudent person, the negligence standard. And, therefore, in determining whether someone is apparently a minor, is would a reasonably prudent person perceive that particular individual in this case, Mr. Jellinik to be a minor? Would it be apparent to a reasonably prudent bartender that Mr. Jellinik was a minor?
When explaining comparative negligence to the jury, the trial judge had this to say:
In effect, what we're saying here is that the  for all intents and purposes, the negligence of Robert Jellinik has been established for the purposes of this proceeding. The question is  is that was part of that negligence attributable, is part of that negligent conduct attributable to some negligence of the defendants? To go about determining this, you must first determine responsibility of Mr. Jellinik for the accident and assuming that you find that Mr. Jellinik was 100% responsible for the accident and the injuries of the plaintiff, then the deter  the question is  you must consider the responsibility of the defendant tavern, or tavern defendants, and Mr. Jellinik for the accident. What portion of Mr. Jellinik's responsibility is attributable to the defendant tavern?
The trial judge continued a little later in the charge with the following:
Based upon your responsibility  based upon your determination of the separate responsibilities of the defendants and Mr. Jellinik, you should then divide the percentage of responsibilities assessed against Mr. Jellinik between the defendants and Mr. Jellinik, totalling no more than the total fault which you initially apportioned to Mr. Jellinik, which I am assuming if you found him to be the sole responsibility  the accident to be his sole responsibility, would be 100%.
Benson's counsel objected to the trial judge conveying the impression that Jellinik was 100% responsible. He suggested to the court that Jellinik's responsibility for the accident had to be determined and then the jury would have to decide if the tavern was responsible as well. At that point, the jury would then have to allocate by percentage the negligence attributable to Jellinik and the tavern, reflecting each party's respective contribution to the happening of the accident.
*558 Defense counsel argued that the judge had mentioned in his charge that the jury was told to assess responsibility of each negligent party making sure it totalled 100% Indeed, the judge had provided the jury with the following instruction.
If you find more than one party has been determined to be negligent and that negligence was a proximate cause of the accident, then you should reflect on the relative responsibility of the two parties involved. You, therefore, should assess each party the  a responsibility which their negligence were the  caused the accident in a percentage and provided that the total amount of those items add up to 100%. A comparison of negligence is made only if the negligence of more than one party proximately caused the accident.
The trial judge also attempted to instruct the jury on the interplay between a finding of Jellinik being visibly intoxicated and Jellinik's ability to appreciate whether he was capable of driving in determining proximate causation. He instructed the jury in the following terms.
You should consider whether the defendant served Mr. Jellinik when he was visibly intoxicated or was apparently a minor. If you find this to be true, you must also evaluate whether Mr. Jellinik retained some rational decision-making ability to appreciate that he was not fully capable of driving. In other words, does the  the  if the actions of Mr. Jellinik were not affected by his intoxicated condition, if his actions, in effect, decision to drive, and so forth, then, therefore, although the defendant might have been negligent in serving him alcoholic beverages, that negligence was not a proximate cause of the accident.
The trial judge did not discuss the verdict sheet with counsel before it was distributed to the jury and counsel at the same time toward the end of the court's charge. The original version of the jury interrogatories is attached as Appendix A.
Defense counsel in an initial side bar objected to question one of the jury interrogatories before they were read aloud by the court to the jury. The question read: "Do you find that Robert Jellinik was apparently a minor or was visibly intoxicated at the time he was served by the tavern defendants?" The question assumed away the issue of whether the tavern had served Jellinik in the first place. The trial judge agreed to revise the first question, but he declined to break it down any further, asking instead a single compound question including all three propositions. The revised *559 version of the Jury Interrogatories which was used by the jury is attached as Appendix B.
Benson's counsel requested a second side bar after the judge had gone over the first five questions of the jury interrogatories. Counsel objected to any questions being asked of the jury as to rational decision-making by the driver. He argued that the case of Lee v. Kiku Restaurant, 127 N.J. 170, 603 A.2d 503 (1992), applied to the situation where a passenger decides to ride with a visibly intoxicated driver and not to the facts presented here. The trial judge acceded to Benson's counsel's request and eliminated questions 3 and 4 in the original version of the verdict sheet, but he never advised the jury to disregard what he had charged them on rational decision-making on the part of Jellinik. See, Feldman v. Lederle Laboratories, 132 N.J. 339, 345-346, 625 A.2d 1066 (1993). Once eliminated, the trial judge never included any questions on the verdict sheet concerning Jellinik's negligence in causing the accident.
During deliberations, the jury sought clarification as to the first question. Their inquiry read:
In respect to question no. 1, question appears to ask for multiple answers. Please clarify, does an answer yes or no, separately, make the question yes or no as a whole?
By way of response, the court said:
The question is, "do you find that Robert Jellinik was served by the tavern defendants and that he apparently was a minor or was visibly intoxicated at the time he was served by the tavern defendants?" If you  if you find that Robert Jellinik was not served by the tavern, the first part of the question, then the rest becomes superfluous and the answer is, therefore, no. If you find that Robert Jellinik was served by the tavern defendants and he was  apparently was a minor, or in the alternative, was visibly intoxicated at the time he was served, if you find that that's  either one is a fact, then the answer is yes. If you find that neither one was a fact, then the answer is no. The question does not require, as I understand the question, multiple answers. I think that should answer your question sufficiently.
The time being 4:30 P.M., the court engaged in some colloquy with the jury on how late they would be required to deliberate on a Friday afternoon, indicating that they would not remain past 5:00 P.M. If they could reach a verdict by 5:00 P.M., that would *560 be acceptable. If more time was required, they could return on Monday to resume deliberations at 9:00 A.M. A juror responded that based on a clarification of the question, a verdict could be reached in a half hour. The jury in a 5-1 vote returned with a verdict answering the first question "no".
Fisch v. Bellshot, 135 N.J. 374, 640 A.2d 801 (1994), emphasizes that the Licensed Alcoholic Beverage Server Fair Liability Act provides the exclusive remedy for dram-shop causes of action. Specifically, N.J.S.A. 2A:22A-4 states in pertinent part:
This act shall be the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server.
Consistent with its preemptive purpose and exclusive nature, the Act defines the elements necessary to make a prima facie case for all dram-shop causes of action. Notably, section 5, N.J.S.A. 2A:22A-5, provides:
a. A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server only if:
(1) The server is deemed negligent pursuant to subsection b. of this section; and
(2) The injury or damage was proximately caused by the negligent service of alcoholic beverages; and
(3) The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.
b. A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor.
In keeping with the very specific elements that have to be proved, model jury charges were formulated prior to Fisch v. Bellshot, supra, and published and distributed before the trial of this case in June 1993. See, Model Jury Charges, Civil 5.39 (3/93). The trial court failed to follow the model jury charge in several significant respects.
The charge provided erroneous instructions as to the capacity of a driver to gauge his ability to drive. Lee v. Kiku Restaurant, supra, 127 N.J. at 183-184, 603 A.2d 503, made it clear there is a *561 presumption that a visibly intoxicated person lacks the capacity to adequately assess the risk of undertaking the acts that lead to the accident. It is equally clear that comparative negligence will apply to joint tortfeasors in dram-shop actions as they apply in all other negligence cases involving joint tortfeasors.[1] Here, the trial judge erred in failing to charge the presumption.
In this connection, we are reminded that the trial judge had erroneously instructed the jury as to Jellinik's ability for rational decision-making in his appreciation of whether he was fully capable of driving. The trial court in its charge had inappropriately focused the jury's attention on Jellinik's conduct in becoming intoxicated, not on the tavern's responsibility for serving him once Jellinik was visibly intoxicated and could not ordinarily be held accountable for making a decision to drive.
Indeed, the trial court should have charged along the following lines in conformity with the Model Jury Charges, Civil 5.39 E.
If you conclude that plaintiff has proven his claim against the tavern, you then must apportion fault between the tavern and Jellinik, the driver, based on the extent to which each party's negligence contributed to the event.
The tavern is responsible for its conduct in serving alcoholic beverages to a visibly intoxicated person. An intoxicated person generally lacks the capacity to adequately evaluate his ability to drive. As a result, the tavern is ordinarily responsible for the driver's decision to drive in an intoxicated state. The driver is, however, responsible for his conduct in drinking to the point of intoxication.
You are to consider the negligence of Jellinik in becoming voluntarily intoxicated, the negligence of the tavern in serving a visibly intoxicated person and the nature and circumstances of the negligent operation of the vehicle. Based on all the relevant evidence you must allocate the responsibility for the negligent operation of that vehicle between Jellinik and the tavern.
Of course, we recognize that the comparative negligence charge does not directly impact on the threshold question in jury interrogatory one, as modified, that the jury answered in the negative. *562 Nonetheless, the trial judge never instructed the jury to disregard what he had erroneously charged about rational decision-making on the driver's part, even though he eliminated those questions from the verdict sheet. Because we do not know what the jury actually decided in answering compound question one on the verdict sheet "no", the potential that this error on the mischarging as to comparative negligence may have affected the jury's decision remains very real. The erroneous charge would tend to focus on plaintiff's voluntary intoxication and not the tavern's act of serving the visibly intoxicated patron. Fisch v. Bellshot, supra, 135 N.J. at 388, 640 A.2d 801. When this error is coupled with how the trial judge handled the percentage allocation of negligence, the conclusion that the jury was hopelessly misled becomes inevitable.
On this score, the trial judge's charge was extremely prejudicial to Benson by the repeated reference to Jellinik being 100% responsible for the accident. The court compounded the error by asking the jury to consider what portion of Jellinik's responsibility was attributable to the tavern, suggesting thereby that a subtraction formula be employed by the jurors instead of a division of responsibility. From there, the court went on to explain the respective responsibilities of Jellinik and the tavern in addressing the comparative negligence issue that was erroneously charged in part as already discussed. He then returned to the earlier theme of assuming Jellinik to be solely responsible for the accident with a fault assessment of 100%.
Jellinik was not at the trial because he had settled. While the jury probably could have figured that out for themselves, they did not have to because defense counsel told them so in his opening statement. That being the case, the court's continued reference to Jellinik being 100% responsible for the accident coupled with the knowledge that he had accepted his responsibility by settling with Benson had the potential to plant too deep a seed in the jury's collective mind that the tavern did not have any responsibility to shoulder insofar as the accident was concerned.
*563 It is axiomatic that appropriate and proper instructions to a jury are essential for a fair trial. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210, 485 A.2d 305 (1984). The charge must "outline the function of the jury, set forth the issues, [and] correctly state the applicable law in understandable language...." Jurman v. Samuel Braen, Inc. 47 N.J. 586, 591-592, 222 A.2d 78 (1966). The instructions here misstated the applicable law. The focus on the tavern's responsibility under the Act that Benson was legally entitled to was seriously compromised and denied him a fair consideration of the liability issue.
Since this case has to be remanded for a retrial, we take this occasion to comment on other aspects of the court's charge as well as the procedure utilized with regard to the verdict sheet.
Respecting jury interrogatory one, it would be preferable not to lump together three questions into a single question. In combining the questions, we, like counsel and the trial judge, were deprived of knowing on what basis the jury answered the question. See, Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 576 A.2d 270 (1990). For all we know, the jury could have decided that Jellinik was not served in the New North End Tavern. Or, they could have decided that he was served, but he was neither visibly intoxicated nor did the server know or reasonably should have known Jellinik to be under age. The better way to have proceeded, as defense counsel requested, was to break the various elements down into separate interrogatories as to the tavern's liability. That could easily have been accomplished by inverting the elements in accordance with Model Jury Charges, Civil 5.39 D., the summary section.[2] The questions would then read:

 1. Did defendant tavern serve alcoholic beverages to
 Robert Jellinik? YES NO
 2. When alcoholic beverages were served
 A. Was Robert Jellinik visibly intoxicated? YES NO
 B. Was Robert Jellinik known or reasonably
 should have been known to the server to be a
 minor? YES NO
*564 3. Was the service of alcoholic beverages a proximate
 cause of the accident to and injuries complained of
 by Randall Benson? YES NO
 4. Were the injuries to Randall Benson a foreseeable
 consequence of the negligent service of alcoholic
 beverages by defendant tavern? YES NO

See, Geherty v. Moore, 238 N.J. Super. 463, 570 A.2d 29 (App.Div. 1990), as to the formulation of jury interrogatories in tavern liability cases.
The court is obliged to tell a jury about an apportionment of damages. N.J.S.A. 2A:22A-6b specifically references joint tortfeasor liability under N.J.S.A. 2A:15-5.2 and limits the licensed alcoholic beverage server or other party to "be responsible for no more than that percentage share of the damages which is equal to the percentage of negligence attributable to the server or other party". Model Jury Charges, Civil 5.39 G. incorporates the relevant statutory language and should be followed.
The reference to "apparent minor" in the court's charge tracks the Model Jury Charges, Civil 5.39 A. Benson's argument that the continued use of the "apparent minor" language not being in conformity with the statutory provision, ignores his own request to charge number one which included the very language he objected to. So long as the statutory language is used in the charge in conjunction with the "apparent minor" language, as embodied in the Model Jury Charges, Civil 5.39 A., the charge should pass muster. Utilizing the statutory language of "known to the server or reasonably should have been known" in the jury interrogatory as already mentioned is the safer route to follow on the verdict sheet.
The trial judge failed to include any questions on the revised verdict sheet that addressed Jellinik's negligence with *565 respect to the accident. When the judge eliminated questions 3 and 4 on the first version of the verdict sheet, he never replaced them with questions respecting Jellinik's negligence and proximate causation. This omission should not occur at a retrial.
While not mentioned by counsel the court's charge does not explain the relationship between the server and the tavern under the respondeat superior principle. Even if the relationship is obvious to counsel, it may not be within the realm of the jury's experience. This omission should likewise be rectified at a retrial.
Lastly, the procedure followed by the trial judge in preparing and presenting the verdict sheet should not be repeated. As in requests to charge, jury questions or jury interrogatories should receive input from counsel. The court should request proposed written verdict sheets from counsel sufficiently in advance of closing arguments. After all, the entire case turns on how the jury answers the questions on the verdict sheet. The framing of those questions in clear and understandable language cannot be overemphasized. See, Bree v. Jalbert, 87 N.J. Super. 452, 209 A.2d 836 (Law Div. 1965), aff'd 91 N.J. Super. 38, 219 A.2d 178 (App.Div. 1966).
Following receipt of counsels' submissions, the court should discuss with them the proposed versions of the verdict sheet. Counsels' proposed verdict sheets should be marked and incorporated as part of the record in the case. Counsel may agree more or be more accommodating on the questions to be asked of the jury than the court might anticipate. In the end the judge has the ultimate responsibility for insuring the correctness of the verdict sheet. Nothing said here should inhibit the trial judge from initially formulating a proposed verdict sheet. The court should always hold its conference on the jury interrogatories prior to closing arguments so that counsel are in a position to know exactly what questions will be put to the jury for its consideration. Counsel may even decide to utilize the questions during the course of his or her closing remarks. That should not be discouraged by the court, but it should, as most matters of procedure, remain *566 within the discretion of the trial judge. Because what we have said here we deem to be so fundamental to the trial process, we are recommending to the Supreme Court Committee on Civil Practice that consideration be given to amending the rules of court in order to treat verdict sheets in the same manner as requests to charge under R. 1:8-7(a).
Reversed and remanded.

 APPENDIX A:
 JURY INTERROGATORIES
 1. Do you find that Robert Jellinik was apparently a minor or
 was visibly intoxicated at the time that he was served by
 the Tavern defendants?
____ YES, go to # 2.
____ NO, cease deliberations
 2. Do you find that the conduct of Tavern defendants in
 serving Robert Jellinik was a proximate cause of plaintiff
 Randall Benson's injuries?
____ YES, go to # 3.
____ NO, cease deliberations
 3. Do you find that Robert Jellinik retained some ability to
 make a rational decision that he was not capable of
 operating a vehicle?
____ YES, go to # 4
____ NO, go to # 4.
 4. Do you find that Robert Jellinik failed to exercise
 reasonable care in light of his capacity for rational
 decision making?
____ YES, go to # 5.
____ NO, go to # 5
 5. What portion of defendants' fault do you allocate to:
 Robert Jellinik ____________%
 Tavern defendants ____________%
 TOTAL 100%
Go to # 6
 6. What amount will reasonably compensate plaintiff Randall
 Benson for his injuries?
 $ ____
*567 Go to # 7.
 7. Do you find that plaintiff Stacy Benson suffered severe
 emotional distress as a result of plaintiff Randall Benson's
 injuries?
____ YES, go to # 8
____ NO, go to # 9.
 8. What amount will reasonably compensate plaintiff Stacy
 Benson for her severe emotional distress?
 $ ____
Go to # 9.
 9. Do you find that plaintiff Stacy Benson has suffered a loss
 of services of plaintiff Randall Benson as a result of
 plaintiff Randall Benson's injuries?
____ YES, go to # 10.
____ NO, cease deliberations.
10. What amount will reasonably compensate plaintiff Stacy
 Benson for her loss of services of plaintiff Randall Benson?
 $ ____
 CEASE DELIBERATIONS
 APPENDIX B:
 JURY INTERROGATORIES
 1. Do you find that Robert Jellinik was served by the Tavern
 defendants and that he apparently was a minor or was
 visibly intoxicated at the time that he was served by the
 Tavern defendants?
____ YES, go to # 2.
____ NO, cease deliberations.
 2. Do you find that the conduct of Tavern defendants in
 serving Robert Jellinik was a proximate cause of plaintiff
 Randall Benson's injuries?
____ YES, go to # 3.
____ NO, cease deliberations
 3. What portion of responsibility for the accident do you
 allocate to:
 Robert Jellinik ____________%
 Tavern defendants ____________%
 TOTAL 100%
Go to # 4.
 4. What amount will reasonably compensate plaintiff Randall
 Benson for his injuries?
 $ ____
*568 Go to # 5.
 5. Do you find that plaintiff Stacy Benson suffered severe
 emotional distress as a result of plaintiff Randall Benson's
 injuries?
____ YES, go to # 6.
____ NO, go to # 7.
 6. What amount will reasonably compensate plaintiff Stacy
 Benson for her severe emotional distress?
 $ ____
Go to # 7.
 7. Do you find that plaintiff Stacy Benson has suffered a loss
 of services of plaintiff Randall Benson as a result of
 plaintiff Randall Benson's injuries?
____ YES, go to # 8.
____ NO, cease deliberations
 8. What amount of will reasonably compensate plaintiff Stacy
 Benson for her loss of services of plaintiff Randall Benson?
 $ ____
 CEASE DELIBERATIONS

NOTES
[1] Benson's counsel argued erroneously that Lee v. Kiku Restaurant, supra, did not apply at all because that case was limited to a passenger accompanying an intoxicated driver. No such limitation obtains and the Court makes that very clear in its opinion. Id. at 182, 603 A.2d 503. See also, Fisch v. Bellshot, supra, 135 N.J. at 388-389, 640 A.2d 801.
[2] We have only provided jury questions as to the server/tavern liability. The court would still have to include questions as to the liability of the driver and comparative negligence between the server/tavern and the driver as well as the usual questions as to damages.