766 A.2d 1103

KAREN L. PONZO AND JOSEPH C. PONZO, HER HUSBAND, PLAINTIFFS–APPELLANTS, v. CHRISTOPHER K. PELLE, DEFENDANT–RESPONDENT.

Argued January 2, 2001—Decided February 27, 2001.

*Bruce H. Nagel* argued the cause for appellants (*Nagel Rice Dreifuss & Mazie*, attorneys; *Mr. Nagel* and *Susan F. Connors*, on the brief).

*Harry D. Norton, Jr.*, argued the cause for respondent (*Norton, Arpert, Sheehy & Higgins*, attorneys).

The opinion of the Court was delivered by

LONG, J.

In December 1992, plaintiff Karen Ponzo was stopped in traffic in her vehicle when she was struck from behind by a vehicle driven by defendant Christopher Pelle. Ponzo sued Pelle for negligence. Her husband Joseph Ponzo sued *per quod.* A five-day trial took place after which a jury returned a no cause verdict in favor of Pelle. Ponzo's motion for a new trial was denied. She appealed and the Appellate Division affirmed the judgment entered upon the jury verdict. We granted certification and now reverse.

*I*

The evidence is as follows: As a result of the collision between Pelle's car and her own, Ponzo's car struck the car in front of her, resulting in minimal damage. Ponzo testified that the "force of the impact was so hard that [she] went forward and came back very heavy against the headrest" and that the collision caused her knee to strike the steering column. She was "badly shaken up" by the accident, but did not appear injured at the scene. In fact,

she did not complain of any injuries to police officers who interviewed her upon arriving at the scene and the police report indicates that the accident resulted in no injuries. Ponzo did not seek medical attention on the day of the accident.

Two days later, she reported to the emergency room of St. Anthony's Hospital complaining of "soreness" and pain in her right knee. She sought follow-up care from Dr. Paul Glicksman, an orthopaedist. Ponzo told Dr. Glicksman that she was experiencing soreness in her neck and back, as well as pain in her knee. Dr. Glicksman diagnosed a contusion and synovitis [1] of the right knee, sent Ponzo for an MRI and prescribed medication to address any inflammation in her knee. Ponzo then began seeing a chiropractor, Dr. Lisa Bloom.

She received treatment for her injuries for a period of eight months with little relief. She also began to experience more severe and debilitating pain in her legs and arms. Thus, in approximately March 1994, Ponzo decided to seek medical attention from Dr. Kim Sloan, another orthopaedist. Dr. Sloan sent Ponzo to Dr. J. Choi, who diagnosed her with Reflex Sympathetic Dystrophy (RSD), a nerve disorder that causes hypersensitivity to pain. Dr. Choi subsequently performed nerve blocks and placed Ponzo on a physical therapy program. In July 1994, Ponzo left her job as a legal secretary and began to collect disability insurance.

Ponzo's knee pain persisted and Dr. Sloan performed arthroscopic surgery on her right knee in November 1994. After the surgery, Ponzo felt "some relief" from the pain in her knee but continued to experience neck and back pain. Thus, she sought further treatment from a neurosurgeon, a psychologist, a physical therapist, and her family physician.

During the trial, at which Pelle conceded that he was negligent in causing the accident, Ponzo claimed that she suffered three

---

[1] Synovitis is inflammation of the membrane of a movable joint. *The American Heritage Stedman's Medical Dictionary* 813 (1995).

distinct injuries as a result of the collision: (1) torn cartilage of the right knee, requiring arthroscopic surgery, (2) two herniated cervical discs, and (3) RSD.

At trial, Ponzo presented expert testimony from Dr. Herbie Sicherman, an orthopaedic surgeon, who opined that as a result of the accident she suffered an injury to her right knee requiring surgery, two cervical disc herniations, and RSD. More particularly, Dr. Sicherman testified that, as a result of the accident, Ponzo suffered bruising and swelling in her right knee that caused some "loose bodies" (little chunks of cartilage) to appear. Dr. Sicherman indicated that surgery was appropriate to repair that knee injury. Dr. Sicherman also testified that Ponzo's injuries were permanent in nature, making her totally disabled for the purpose of performing any significant work. On cross-examination, Dr. Sicherman acknowledged that an MRI of Ponzo's knee was reported as normal by two different doctors, Dr. Glicksman and a radiologist who examined the results of the MRI.

Pelle offered the testimony of two physicians, Dr. Robert Goldstone and Dr. Aaron Rabin. Dr. Goldstone, an orthopaedist, conceded that Ponzo suffered from cervical disc herniations, but opined that those injuries were unrelated to the accident. Dr. Goldstone also disputed the RSD diagnosis because he was unable to find any objective evidence of that condition. Dr. Goldstone believed that the pain Ponzo was experiencing was due largely to psychological factors. Regarding the knee injury, Dr. Goldstone, who examined Ponzo after her arthroscopic surgery, testified that "[s]he may have suffered an injury prior to the time I saw her," but there was no permanent impairment. He further stated that the "examination of the knee which I carried out was entirely normal." On cross-examination, the following exchange occurred between plaintiff's counsel and Dr. Goldstone:

Q: Now, let me just maybe clear this up before we go any further. There were reports and there were, well, certainly there were reports from numerous parties that Mrs. Ponzo had suffered an injury to her right knee as a result of the motor vehicle collision that occurred on December 24, 1992; is that correct?

A: Yes.

Q: Do you have any dispute with that?

A: No.

Q: So—and there certainly are reports that indicated that Dr. Sloan performed arthroscopic surgery on the right knee of Miss Ponzo, are you familiar with that?

A: Yes.

Q: Was there anything that you saw in any of the reports that indicated that the surgery performed by Dr. Sloan was not necessary or in any other way inappropriate?

A: No.

Q: So that it would be safe for me to say, based on a reasonable medical certainty, that Miss Ponzo suffered an injury to her right knee as a result of the motor vehicle accident of December 24, 1992 and had surgery as a result of those injuries performed by Dr. Sloan?

A: That was a complex question. Certainly I acknowledge, if I can take it apart. I certainly acknowledge she had surgery by Dr. Sloan. Basically, I can only say that I found no reason to state with a reasonable degree of medical probability that there was no relationship.

Q: So there would be nothing based on either the reports you reviewed or your examination or any other material you're aware of that indicate the injuries that Mrs. Ponzo suffered today were not related to the accident of December 4, 1992.

A: That's correct.

Pelle also presented the testimony of Dr. Rabin, a neurologist. Dr. Rabin testified that his examination of Ponzo revealed no evidence of a permanent neurological injury resulting from the automobile accident. Dr. Rabin disputed the diagnosis of RSD and the existence of herniated cervical discs. Dr. Rabin also stated that he found no neurological evidence of an injury to the knee, but he deferred to the opinion of an orthopaedist for a more definitive determination.

In summation, defense counsel stated:

But then we get to the next step. We get to the medical aspect of things, because again—I guess there's an expression, at least I try to teach my kids this, that first impressions are the best impressions. Well, in this particular case I submit to you that what occurred in this particular case was exactly as was diagnosed by Dr. Glicksman in his very initial report, in his very initial examination of Mrs. Ponzo.

He indicated that she suffered a contusion and synovitis of the right knee, and he also indicated, and you know this through the testimonies of the various doctors, that he indicated a sprain of the lumbosacral area. That is what he diagnosed.

He went on:

Let's turn to the knee. The knee, assuming for argument's sake, and we have nothing to dispute it, folks. I'm going to tell you at the end again and again that it was associated with this accident. Dr. Sloan did a great job. Dr. Sloan did an arthroscopic procedure and took care of the knee.

In its charge to the jury, the trial court stated:

In this case, the defendant has not denied that he was negligent. It's also my understanding that the defendant does not deny that Karen Ponzo sustained an injury from the accident. The defendant, however, contests the nature and extent of the injury or injuries, and the defendant maintains that any injury is not permanent, and that Karen Ponzo is not totally disabled from gainful employment.

Thereafter, the trial court submitted a single interrogatory to the jury: "Did the defendant's negligence proximately cause damage to Karen Ponzo?" The jury answered "no" to that question and thus returned a verdict of no cause for action in favor of Pelle. Ponzo moved for a new trial, contending that the issue of proximate cause of the knee injury should have been removed from the jury's consideration because of an alleged concession by Dr. Goldstone. The trial court found that Dr. Goldstone had not made a concession and that there was no miscarriage of justice.

On appeal, Ponzo raised the following issues: (1) the trial court erred in submitting an ambiguous single interrogatory to the jury; (2) the trial court erred in failing to instruct the jury that proximate cause was no longer an issue concerning the injury to Ponzo's knee; (3) remarks by defense counsel during his summation required a new trial; and (4) the trial court improperly denied plaintiff's motion for a new trial.

The Appellate Division considered the jury charge as a whole and held that the jury was not misled by the interrogatory. Although "it was undisputed that plaintiff struck her knee on some part of the interior of her car and experienced some swelling and pain for a period of time after the accident" and that plaintiff "underwent an arthroscopic procedure in November 1994 to repair cartilage in the knee," the Appellate Division held that Ponzo

never requested a directed verdict regarding the knee injury, and that "neither defense counsel nor defendant's medical witnesses ever conceded that the cartilage damage and the 1994 repair were causally related to the December 1992 accident." Thus, the panel found that the issue of proximate causation should not have been removed from the jury as "[t]he jury was still required to assess the strength of the opinion regarding causation proffered by plaintiff's expert witness." The panel did note that one segment of defense counsel's summation could, when viewed by itself, be construed as an admission that Ponzo's surgery was related to the accident but explained that when the summation was considered in its entirety, "defendant made no such concession." The court rejected Ponzo's remaining arguments as without merit.

## II

We fully agree with the Appellate Division's conclusion that Ponzo's challenge to defense counsel's summation is lacking in merit. R. 2:11–3(e)(1)(e). Accordingly, this appeal implicates two primary issues: Whether there was a concession that Ponzo suffered a knee injury in the accident; and if so, whether the single jury interrogatory improperly skewed the outcome of the case.

### A.

We turn first to the question whether Pelle conceded that Ponzo sustained an injury in the accident. Preliminarily, we disagree with the notion suggested by the Appellate Division that Ponzo was required to seek a directed verdict on that issue or forego it altogether. Ponzo might well have made such a motion, but she was not compelled to do so and, if there was an evidential concession, the issue should have been flagged for the jury.

Although this record is not a model of clarity, such a concession clearly is inferable. Dr. Goldstone did not contest that Ponzo suffered a knee injury in the accident, nor did he opine that the arthroscopy was not necessary. Indeed, he agreed that there was

"nothing" in the record to suggest that the knee injury Ponzo suffered was not related to the accident or to controvert Dr. Glicksman's initial diagnosis of contusion and synovitis. That testimony, standing alone, may not rise to the level of a concession. However, it was placed into higher relief by defense counsel's remarks on summation. Although defense counsel's remarks are not evidence, they do underscore the issues a party concedes and those he or she contests. In summation, defense counsel said:

I submit to you that what occurred in this particular case was exactly as was diagnosed by Dr. Glicksman in his very initial report, in his very initial examination of Mrs. Ponzo. He indicated that she suffered a contusion of the right knee and he also indicated, and you know this through the testimonies of the various doctors, that he indicated a sprain of the lumbosacral area.

That was not a mere recapitulation of Ponzo's evidence; it was a statement by defense counsel that the jury should accept Dr. Glicksman's "initial impression" that Ponzo sustained a knee injury in the accident.

Defense counsel followed those comments with the acknowledgment that he knew Ponzo was injured in the accident:

Let's turn to the knee. *The knee,* assuming for argument's sake, and we have nothing to dispute it, folks. I'm going to tell you at the end again and again that *it was associated with this accident.* (emphasis added).

Defense counsel also admitted that the surgery on the knee was necessary: "The knee, *something happened* and a great job was done" to repair it. (emphasis added). A reasonable juror could only conclude from those comments that Pelle conceded that Ponzo sustained a knee injury in the accident that was successfully repaired by surgery.

If there was any doubt regarding the existence of a concession, it was erased during plaintiff's summation to which no exception was taken:

Now I want to point out to you one more thing that has been admitted and I don't want you to forget this. Dr. Goldstone was asked by me in his examination that you saw on the videotape, were the injuries that were sustained by Karen Ponzo to her knee the direct result of the accident that occurred on December 24, 1992, and he testified yes. I asked him, was the surgery that was performed on Karen Ponzo's knee by Dr. Sloan the result of the injuries she sustained in the accident on December 24, 1992. He testified yes.

I asked him a third question. I said, was the surgery that was performed by Dr. Sloan appropriate, there was nothing wrong with that surgery. He indicated yes. Now remember Dr. Goldstone is the defense expert. He wasn't Mrs. Ponzo's expert. He was their expert. So he testified one, that—and Mr. Norton candidly admitted that before, that one, the accident caused the injuries to Mrs. Ponzo's knee. The surgery was a result of the injuries sustained by Mrs. Ponzo and that that surgery was appropriate.

As if to drive the point home, the trial court said the following in his instructions:

It's also my understanding that the defendant also does not deny that Karen Ponzo sustained an injury from the accident. The defendant, however, contests the nature and extent of the injury or injuries, and the defendant maintains that any injury is not permanent, and that Karen Ponzo is not totally disabled from gainful employment.

Defense counsel apparently did not believe the cited language was inaccurate and took no exception to it. In short, everyone at trial understood that, although her other injuries were hotly contested, there was no contest over the fact that Ponzo sustained an injury to her knee during the accident. To be sure, the extent of that injury was hotly disputed but its existence was not. Although the trial judge took a different view when faced with a motion for a new trial, the record clearly establishes Pelle's concession.

## B.

Against that backdrop, we turn to the single jury interrogatory: "Did defendant's negligence proximately cause damage to Karen Ponzo?" Because there was no objection to the form of the interrogatory, the plain error standard applies. *R.* 2:10–2. In other words, the interrogatory will withstand attack unless it was clearly capable of producing an unjust result.

Ordinarily, "a trial court's interrogatories to a jury are not grounds for reversal unless they were misleading, confusing, or ambiguous." *Sons of Thunder v. Borden, Inc.*, 148 *N.J.* 396, 418, 690 *A.*2d 575 (1997). Interrogatories are meant to serve particular purposes: "to require the jury to specifically consider the essential issues of the case, to clarify the court's charge to the

jury, and to clarify the meaning of the verdict and permit error to be localized." *Wenner v. McEldowney & Co.*, 102 *N.J.Super.* 13, 19, 245 *A.*2d 208 (App.Div.), *certif. denied,* 52 *N.J.* 493, 246 *A.*2d 452 (1968). "The framing of [jury] questions in clear and understandable language cannot be overemphasized." *Benson v. Brown,* 276 *N.J.Super.* 553, 565, 648 *A.*2d 499 (App.Div.1994).

■ We are also mindful that in reviewing an interrogatory for reversible error, we should consider it in the context of the charge as a whole. *Sons of Thunder, supra,* 148 *N.J.* at 418, 690 *A.*2d 575. An accurate and thorough jury charge often can cure the potential for confusion that may be present in an interrogatory. *Id.* at 415–20, 690 *A.*2d 575; *Mogull v. CB Commercial Real Estate Group, Inc.*, 162 *N.J.* 449, 470–71, 744 *A.*2d 1186 (2000). That is not the case here.

Here, Pelle conceded negligence so that issue was resolved. Ponzo claimed three distinct injuries: knee, back and RSD. As we have indicated, there was a concession that a knee injury was proximately caused by the accident. Therefore, the jury's only inquiry regarding that injury was its extent and what amount of money, if any, was necessary to compensate Ponzo for it.

■ By contrast, the very existence of Ponzo's two other injuries was hotly disputed. Indeed Pelle contested whether Ponzo suffered a back injury or RSD at all. Thus, regarding those claims, the jury had to decide whether Ponzo suffered an injury, and, if so, whether it was proximately caused by the accident. If the jury answered those questions affirmatively, only then would the extent of Ponzo's injuries and damages require disposition. In other words, the knee injury implicated two questions: its extent and damages. On the contrary, the claimed back injury and RSD required the jury to answer four questions: did the injuries exist; were they caused by the accident; what was the extent of the injuries; and what amount would compensate Ponzo? The single interrogatory was inadequate to alert the jury to its differentiated task.

■ Where there are multiple allegations, multiple interrogatories are not only the best way to focus the jury's attention on the details of the case but also to ascertain, with some degree of specificity, what the jury has actually determined. *Kassick v. Milwaukee Elec. Tool Corp.*, 120 *N.J.* 130, 134, 576 *A.*2d 270 (1990) (stating that where plaintiff contends that product suffers from more than one defect, better practice is to make each alleged defect subject of separate interrogatory); *Benson, supra*, 276 *N.J.Super.* at 563, 648 *A.*2d 499 (holding that "it would be preferable not to lump together three questions in a single" interrogatory). A corollary is that in order to assist the jury, and to avoid unnecessary effort and possible confusion, a trial judge should eliminate from disposition matters that are not truly in contest. *Menza v. Diamond Jim's, Inc.*, 145 *N.J.Super.* 40, 45, 366 *A.*2d 1006 (App.Div.1976) (holding that "where the facts adduced leave no doubt that if there was negligence there was also proximate cause, the jury should be instructed only as to the issue of negligence").

That is not to suggest that every single case requires finely diced interrogatories. However, where, as here, Ponzo advanced three distinct injuries from the accident, the existence of only two of which Pelle disputed, the single jury interrogatory was inadequate. The trial court should have crafted interrogatories that reflected the concession regarding the knee injury and detailed the distinct approach that was required of the jury where Pelle advanced entirely distinct defenses to the different claims.

■ To be sure, as Ponzo has conceded, the interrogatory would have passed muster if the jury had answered it in the affirmative and then awarded minimal damages. Because it did not do so, we cannot be sure whether the jury simply misunderstood the concession regarding the knee injury or whether it was confused by being required to render a global answer to questions needing individual and potentially different responses. Because it is impossible for us to ascertain what happened and localize the error, a new trial is required.

## III

The judgment of the Appellate Division is reversed. The matter is remanded for a new trial consonant with the principles to which we have adverted.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.