**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3045-16T4

MICHAEL SMITH,

     Plaintiff-Appellant,

v.

HUNG Q. NGUYEN, M.D. and
ADVANCED SURGICAL
CONSULTANTS,

     Defendants-Respondents.

_____

<div style="margin-left:2em">

Argued December 17, 2018 – Decided February 14, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1129-13.

Michael B. Zerres argued the cause for appellant (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; Michael B. Zerres, of counsel; Robert C. Sanfilippo, on the briefs).

James H. Moody argued the cause for respondents (Orlovsky, Moody, Schaaff, Conlon & Gabrysiak, LLC, attorneys; James H. Moody and Anthony W. Liberatore, on the brief).

</div>

PER CURIAM

Plaintiff Michael Smith went to the hospital emergency room after experiencing abdominal pain for several days. Diagnostic tests did not establish whether plaintiff was suffering from appendicitis. The emergency room doctor called in defendant, Dr. Hung Q. Nguyen, a surgeon, for consultation and further evaluation. Defendant performed a laparoscopic diagnostic procedure in anticipation of removing plaintiff's appendix. However, during the procedure, defendant observed an abnormal lesion on plaintiff's colon near the appendix.

Although he could not determine from observation whether the lesion was malignant or benign, defendant suspected it was the cause of plaintiff's pain. While plaintiff was under general anesthesia, defendant made a larger incision that permitted him to feel the lesion and examine it further. Defendant performed an appendectomy, removing plaintiff's appendix, and a hemicolectomy, removing that portion of plaintiff's colon where the lesion was located and other surrounding tissue. Laboratory tests revealed the lesion was not malignant; plaintiff's appendix was abnormal but did not evidence acute or chronic appendicitis.

Plaintiff remained hospitalized for several days following surgery. He subsequently experienced pain and discomfort at the incision site and

2

complained of recurrent diarrhea. Plaintiff underwent two surgeries to correct hernias at the incision site, and, at the time of trial, was contemplating a third hernia operation.

Plaintiff filed a complaint against defendant alleging he deviated from accepted medical standards and that he failed to obtain plaintiff's informed consent. The jury unanimously concluded plaintiff failed to prove defendant deviated from accepted medical standards. Plaintiff did not make a motion challenging that portion of the verdict in the Law Division, nor does he challenge that verdict on appeal.

The judge also asked the jury to answer two interrogatories on the issue of informed consent.

> 3. Did . . . defendant . . . give . . . plaintiff . . . all of the information that a reasonable patient in plaintiff['s] . . . position would expect defendant . . . to disclose in order that . . . plaintiff . . . could make an informed decision about the course of his treatment?
>
> . . . .
>
> 4. Would a reasonably prudent patient under the circumstances have consented to the surgery, had he been fully informed?
>
> [(Emphasis added).]

The jury unanimously found that defendant failed to provide plaintiff with all necessary information. However, the jury also unanimously concluded that plaintiff would have consented to "the surgery" had he been fully informed.

Plaintiff moved for a new trial. He argued that the jury should have considered the informed consent issue separately as to both procedures, i.e., the laparoscopic diagnostic procedure/appendectomy and the hemicolectomy. Plaintiff contended the jury interrogatories on informed consent "were neither clear nor comprehensive[] and[] had a tendency to cause jury confusion." The judge denied plaintiff's motion and this appeal followed.

Before us, plaintiff reasserts the argument, contending the interrogatories were "incomplete, confusing, misleading and ambiguous," amounting to plain error that resulted in a "miscarriage of justice" requiring a new trial.[1] We have

---

[1] At trial, plaintiff submitted proposed interrogatories that asked whether defendant had obtained plaintiff's informed consent, and then asked the jury to consider separately whether "a reasonable person" would have consented to the laparoscopic appendectomy and whether "a reasonable person" would have consented to the hemicolectomy. Defendant objected and the judge proposed using the interrogatories she actually submitted to the jury. Plaintiff's counsel consented to the interrogatories, as long as he could argue in summation, as he in fact did, that defendant needed to obtain plaintiff's informed consent as to both procedures. Given these circumstances, plaintiff acknowledged before us that the plain error standard guides our review. See R. 2:10-2 (permitting the appellate court to review "in the interests of justice" any error not brought to the

A-3045-16T4

considered the argument in light of the record and applicable legal standards. We affirm.

I.

Plaintiff's theme throughout trial was that defendant failed to obtain his informed consent prior to performing both the laparoscopic procedure and the hemicolectomy. We describe only that portion of the testimony necessary to place the legal issue before us in context.

It was undisputed that defendant recommended plaintiff undergo a diagnostic laparoscopic procedure with possible appendectomy. Plaintiff testified that defendant told him he could return home the day after the procedure. Alternatively, plaintiff could return home without undergoing the procedure but could possibly die if his appendix ruptured. It was disputed whether defendant offered plaintiff the option of admission to the hospital for further observation.

Plaintiff signed two consent forms: a "Consent for Medical Treatment" at 11:30 a.m. before he met defendant for the first time in the emergency room;[2]

---

attention of the trial court if it "is of such a nature as to have been clearly capable of producing an unjust result").

[2] Neither form is in the appellate record.

and a "Consent to Operate" prior to surgery.[3] Plaintiff testified that he believed he was only consenting to a laparoscopic appendectomy.

Defendant wrote on the "Consent to Operate" form — "[d]iagnostical laparoscopy, possible appendectomy, possible open laparotomy" — as the procedures for which he was obtaining plaintiff's consent. The form also stated: "[i]f any unforeseen condition arises in the course of the operation calling [the doctor's] judgment for procedures in addition to or different from those now contemplated, I further request and authorize [the doctor] to do whatever [the doctor] deems advisable." The form further provided: "[t]he nature and purpose of the operation, possible alternative methods of treatment, the risk involved and the possibility of complications have been fully explained to me by my physician."

We need not describe the particulars of the surgery, except to say that defendant acknowledged there were other options available to investigate the lesion instead of performing a hemicolectomy. Defendant could have performed

---

[3] The parties disputed when plaintiff signed this second consent form. Plaintiff testified he signed it while on the gurney immediately before surgery, although at his deposition, plaintiff could not recall when he signed the form. Defendant testified that he did not have the form with him when he discussed its contents with plaintiff, but specified that the discussion occurred in the emergency room.

a biopsy, or, he could have stopped the procedure and discussed plaintiff's options, including a further "work . . . up" by himself or another doctor, and a possible second surgery.

Plaintiff testified that he would not have consented to the laparoscopic appendectomy had he known the option existed for admission to the hospital with continued observation. He also testified that he would not have consented to the hemicolectomy to treat an abnormality that may or may not have been cancerous. Rather, plaintiff would have consulted his primary care doctor or obtained a second opinion.

Plaintiff's expert, Dr. Robert Villare, a board certified surgeon, testified that admission to the hospital for further observation prior to any laparoscopic procedure was a reasonable option that defendant should have offered to plaintiff. Dr. Villare also asserted that defendant should have withdrawn the laparoscopic equipment after removing plaintiff's appendix and provide plaintiff with options regarding the lesion on his colon.

Dr. John Morris testified as defendant's surgical expert. Dr. Morris acknowledged that a physician should advise a patient of all "medically reasonable" courses of treatment. Although he testified at trial that admitting plaintiff for observation was not "reasonable given []his presentation," Dr.

Morris stated at his deposition that admitting plaintiff to "perform serial examinations[,] . . . follow his clinical course, follow his laboratory values and potentially repeat imaging" was an available option.

Dr. Morris opined that defendant's decision to perform the hemicolectomy was appropriate. He asserted that the consent form and any discussion defendant had with plaintiff appropriately dealt with "situations that arise, albeit unusual, where you have to go to Plan B[.]"

The judge followed the model jury charge as to informed consent. After deliberating for several hours, the jury sent out a two-part question:

> [R]egarding Question 4: Are we to understand that "fully informed" means aware of the presence of the lesion?
>
> [W]hat is "the surgery"; i.e., is "the surgery" the appendectomy or the hemicolectomy?

With counsels' consent, the judge provided the jury with the following response:

> With respect . . . to what constitutes "fully informed," it is what a reasonably prudent patient would want to know under the circumstances. . . .
>
> With respect to [q]uestion [n]umber [two], the "surgery" is the surgery in its entirety, including both the appendectomy and the hemicolectomy.

A-3045-16T4

Jury deliberations continued into a second day, during which the jury asked for and heard the cross-examination and redirect testimony of defendant, before returning its verdict.

In denying plaintiff's motion for a new trial, the judge reasoned that evidence about plaintiff's pain was of "particular importance" to the jury. She noted the jury could reasonably accept that plaintiff's pain was potent enough to require a visit to the emergency room, had progressed over three to four days, and that plaintiff experienced increased pain while in the emergency room despite being given pain medication. The judge observed that plaintiff's credibility was "hurt somewhat" because he seemingly attempted to minimize his pain during his testimony.

The judge said plaintiff's credibility went directly to the issue of informed consent, because plaintiff argued that he should have been given the option of admission and observation, and that even in the midst of surgery, he should have been offered opportunities for additional testing instead of the hemicolectomy. The court explained it was "fair to conclude that the jury believed . . . [plaintiff] was in significant pain and that, presented with the question of 'Would a reasonably prudent patient under the circumstances have consented to the

surgery had he been fully informed,'" "the jury clearly and understandably said yes . . . ."

The judge stated that while the focus of plaintiff's case seemed to be on the hemicolectomy, plaintiff's arguments that defendant should have obtained informed consent for both the appendectomy and the hemicolectomy were clear to the jury. She reasoned that the jury found a reasonably prudent person, "fully advised as to either procedure," would have consented to the surgery in light of the evidence and credibility issues of plaintiff.

## II.

Rule 4:49-1(a) provides that the trial court shall grant a motion for a new trial if "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." We review the denial of a motion for a new trial using the same standard as the trial judge and, therefore, reverse only if "there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011) (citing Bender v. Adelson, 187 N.J. 411, 435 (2006)). In our review, however, we "must give 'due deference' to the trial court's 'feel of the case.'" Ibid. (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)).

"A verdict sheet is intended for recordation of the jury's verdict and is not designed to supplement oral jury instructions." State v. Gandhi, 201 N.J. 161, 196 (2010) (citing State v. Reese, 267 N.J. Super. 278, 287 (App. Div. 1993)). We note that plaintiff does not challenge any aspect of the judge's instructions.

The Court has clearly stated "that interrogatories, like any other instructions to a jury, [a]re 'not grounds for a reversal unless they [a]re misleading, confusing or ambiguous.'" Mogull v. CB Com. Real Estate Grp., 162 N.J. 449, 467 (2000) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418 (1997)). When there is no objection to the interrogatories, as in this case, "we must determine whether the interrogatories were so misleading, confusing, or ambiguous that they produced an unjust result." Id. at 468.

We acknowledge that "[w]here there are multiple allegations, multiple interrogatories are not only the best way to focus the jury's attention on the details of the case but also to ascertain, with some degree of specificity, what the jury has actually determined." Ponzo v. Pelle, 166 N.J. 481, 492 (2001) (citing Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 134 (1990)). In Ponzo, for example, the Court found reversible error when the trial court submitted a single interrogatory, even though the plaintiff "advanced three distinct injuries from the accident, the existence of only two of which [the

defendant] disputed," and where the defendant "advanced entirely distinct defenses to the different claims." Ibid.

However, in Newmark-Shortino v. Buna, the plaintiff asserted separate claims that the defendant doctor deviated from accepted medical standards on two different days. 427 N.J. Super. 285, 309 (App. Div. 2012). The judge submitted a single interrogatory. Id. at 310. Although we reversed because the judge failed to charge the jury on informed consent, id. at 308-09, we found that despite the plaintiff's multiple claims, the submission of a single interrogatory on medical negligence, was not "'confusing' and . . . there was [no] need to separate plaintiffs' allegations of deviation into 'finely diced interrogatories.'" Id. at 311 (quoting Ponzo, 166 N.J. at 492).

Here, it may have been preferable to provide the jury with separate interrogatories. However, in answering the jury's question, the judge made clear that the "surgery" referenced in the interrogatory was "the surgery in its entirety, including both the appendectomy and the hemicolectomy." In fact, as the answer to interrogatory three demonstrates, the jury accepted plaintiff's contention that defendant failed to provide him with all necessary information regarding options to the surgery, i.e., the appendectomy and the hemicolectomy, so as to permit an informed choice. As the judge persuasively reasoned in

denying plaintiff's motion for a new trial, the jury simply refused to credit plaintiff's assertion that he would not have submitted to the surgery, either the appendectomy, the hemicolectomy, or both, if properly informed.

Under these circumstances, we agree with the trial judge. It does not "clearly and convincingly appear[] that there was a miscarriage of justice under the law." R. 4:49-1(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3045-16T4