969 A.2d 1155 (2009)
407 N.J. Super. 123
Dordaneh MALEKI, M.D., Plaintiff-Appellant/Cross-Respondent,
v.
ATLANTIC GASTROENTEROLOGY ASSOCIATES, P.A.; DHC; Access; Anesthesia Research; Barry Kaufman, M.D., individually; Joseph Spaar, M.D., individually; John Santoro, D.O., individually; and Gary Rosman, M.D., individually, Defendants-Respondents/Cross-Appellants.
No. A-1585-08T3
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2009.
Decided May 7, 2009.
*1156 Carl D. Poplar, Cherry Hill, argued the cause for appellant/cross-respondent.
Robert D. Towey, Roseland, and David G. Tomeo, Livingston, argued the cause for respondents/cross-appellants (Lowenstein Sandler and Becker Meisel, attorneys; Mr. Towey and Mr. Tomeo, on the brief).
Before Judges FISHER, C.L. MINIMAN and KING.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reject the trial judge's determination that a typographical error in the jury verdict sheet, which mistakenly referred on three occasions to a single defendant as "defendants," caused jury confusion and warranted a new trial. Accordingly, we reverse the order granting a new trial on that basis.
Plaintiff Dordaneh Maleki, M.D., filed suit against defendant Atlantic Gastroenterology Associates, P.A. (AGA), as well as individual members of AGA's medical practice and other business entities, alleging a breach of her employment contract with AGA, equitable fraud and a breach of the implied covenant of good faith and fair dealing. Plaintiff was a board-certified gastroenterologist who entered into an employment relationship with AGA in 2000 for a period of years. The circumstances related to the formation of their agreement need not be explored here to any great degree. In essence, plaintiff claimed that at the end of the term of employment AGA failed to honor its promise to give her a full and equal share of the medical practice. Specifically, plaintiff claimed the right to a full interest not only in AGA but in what she claimed were two related entities, defendants DHC and ACCESS. She alleged that ACCESS was an entity that managed the surgical center where AGA doctors performed procedures on their patients. As part of the arrangement among these entities, AGA would transfer to ACCESS a portion of its gross income in management fees; ACCESS was wholly owned by DHC, 95% of which was owned by the individual defendants. Plaintiff argued that the value of AGA was reduced by this alleged siphoning of funds to the individual defendants and that the denial of an equal share of ACCESS and DHC provided her with a lesser interest in the medical practice than that received by the individual defendants.
At the beginning of the trial, counsel and the trial judge discussed how plaintiff's claims would be presented to the jury. The judge questioned the viability of plaintiff's equitable fraud claim, taking the view that a finding in plaintiff's favor on *1157 the contract claim would necessarily eviscerate the fraud claim, yet he made no dispositive ruling regarding the equitable fraud claim at that time.
Because plaintiff and AGA were the only contracting parties, the judge introduced the case to the jury in his opening remarks by referring only to plaintiff and AGA in his discussion of the contract claim. In his final instructions to the jury, however, the judge made reference to both "defendants" and "defendant" in identifying the target of plaintiff's contract claim, and, of further importance here, the jury verdict sheet posed three questions to the jury, each seeking the jury's finding as to the conduct of "defendants" instead of AGA or "defendant."[1] The jury returned a verdict in favor of plaintiff.
After the verdict was rendered, the accidental reference to "defendants" in the verdict sheet took flight. The judge paused as he described the judgment required by the verdict:
THE COURT: On the jury verdict, judgment will be entered in favor of the plaintiff and againstI ducked the issue until now because I didn't know if I was going to deal with it now but, clearly, I'm going to enter judgment against [AGA] on the breach of contract claim on the theory that that was the party to the contract in the amount of the jury verdict $8,717,992.
The judge then stated he would "leave for another day the question of whether any judgment in any amount is to be entered against any of the other defendants."
AGA moved, in the alternative, for a stay of the judgment, a new trial, a judgment notwithstanding the verdict, or a remittitur. Plaintiff opposed the motion and cross-moved for the entry of a judgment against all named defendants. Although not asserted by either side, the judge sua sponte questioned, by way of a letter sent to counsel in advance of the motions' return date, whether his use of "defendants" instead of "defendant" in the verdict sheet created jury confusion,[2] and requested supplemental briefs.
In ruling upon the post-verdict motions, the judge rejected all the parties' contentions. Instead, he focused on his mistaken references to "defendants" in the jury ccharge and the verdict sheet. The judge observed that he "immediately" realized as the jury returned its verdict that there was a problemthat he had "failed to make it clear ... who the target defendant... was." The judge concluded that his use of the word "defendants" in the verdict sheet likely generated confusion, which necessitated a new trial on the issue of liability; he did not, however, believe that this circumstance required a new trial on damages. That is, the judge directed, by way of paragraph 3 of his order, a new trial "on the issues of whether [plaintiff and AGA] entered into an agreement and, if so, whether that agreement was breached by [AGA]." Paragraph 4 of the order directed that

*1158 If, at the retrial, Plaintiff pursues any other claim against [AGA] or any claim against any of the other defendants, the jury's determination of damages will also be vacated and the new trial will reconsider that issue as well. If, at the retrial, Plaintiff does not pursue any other claim against [AGA] or any claim against any of the other defendants, the jury's determination of damages will not be vacated and the retrial will not consider that issue.
Paragraph 5 provided plaintiff with thirty days to make the required election.[3]
Both sides moved for leave to appeal this interlocutory order. Plaintiff asserted that the order was erroneous because the reference to "defendants" in the jury verdict sheet could not have created any confusion in the jurors' minds. Defendants moved for leave to appeal because they believed that the judge's decision required a new trial on all issues, that the damage award could not independently stand once the liability verdict fell, and that plaintiff should not have been given the option to shape the issues at the new trial. We granted both motions for leave to appeal and now reverse.
Litigants are not entitled to perfect trials, only trials free of prejudicial error. See, e.g., State v. Feaster, 156 N.J. 1, 84, 716 A.2d 395 (1998), cert. denied, 532 U.S. 932, 121 S.Ct. 1380, 149 L. Ed.2d 306 (2001). In examining whether mistakes made in jury instructions require intervention, a court must determine whether the charge, "considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." Fischer v. Canario, 143 N.J. 235, 254, 670 A.2d 516 (1996). See also Wade v. Kessler Institute, 172 N.J. 327, 341, 798 A.2d 1251 (2002). This same approach is taken with regard to mistakes in a jury verdict sheet. Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 467-68, 744 A.2d 1186 (2000); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997). In adhering to this standard, we are required to first examine what the jury was asked to decide.
As we have noted, at the trial's outset the judge engaged in an extensive discussion with counsel in framing the issues to be presented to the jury. Plaintiff sought submission of both her breach of contract and equitable fraud claims. The judge recognized the jury would be required to ascertain the terms of the contract, determine whether the contract was breached, and, if so, fix damages, and that AGA was the only target of that claim. The judge considered the fraud claim, which sought relief from other defendants, as secondary at best or, more likely, subject to the verdict on the contract claim; that is, the judge suggested that findings in favor of plaintiff on the contract claim would eliminate the fraud claim.
Without resolving the apparent conflict between the contract and fraud claims, the judge described for the jury, at the start of the trial, the contractual nature of the claim brought by plaintiff against only AGA:
Dr. Maleki is the plaintiff in the case. She was formerly an employee, a professional medical employee, of the defendant entity Atlantic Gastroenterology Associates. That's the last time I think *1159 I'm going to say that. I'm going to say AGA from now on. She worked for them for a number of years pursuant to that agreement. She does not work for them any longer. There's a dispute between the parties with respect to what it was that they agreed to and what it was that they expected and what it was that the defendant provided, and you're going to be hearing about the details of that dispute tomorrow, and then you're going to be hearing testimony with respect to it. With regard to some of the legal principles that apply, let me start with the basic one. The plaintiff brings this claim against this defendant seeking damages for what is called a breach of contract....
....
In this case, ... [w]e have a written agreement that the parties signed, but I suspect, as you're going to hear from the evidence, notwithstanding that they have signed that written agreement, there is a significant dispute about what it was that they agreed to.... So you will keep in mind for the breach of contract claim that at the end of the trial, after having considered all of the evidence and looked at the documents and listened to the witnesses and talked to each other, the first question you're going to be asked to decide is did the parties have an agreement? Did they have a meeting of the minds on a certain set of issues that you'll hear about? And if in fact they had an agreement, they had a meeting of the minds, did the defendant breach or fail to comply with whatever it was on that subject that the parties agreed to? And if you find that they did have a meeting of the minds, and if you find that the defendant did indeed breach that agreement, then you will be asked to evaluate in dollars and cents terms what the plaintiff lost....
Despite his reservations about the presentation of the fraud claim, the judge advised the jury that plaintiff had made a "second assertion" based upon "a misrepresentation by the defendants as to certain things." He provided little detail at that time as to what plaintiff would be required to prove. The judge also conveyed to the jury that he had only provided a rough outline and that further instructions would be given at the end of the case.
Throughout the eight-day trial, there were instances of loose references to AGA as "defendants,"[4] but a careful review of the record reveals that the chief thrust of the claim related to plaintiff's breach of contract claim against only AGA. There were numerous references during the trial to defendants other than AGA; this was inevitable since individual defendants were involved at the contract's formative stage, and plaintiff's alleged right to share in defendants DHC and ACCESS was a critical disputed issue. But the clear theme of the case called for the jury to decide the content of the contract, its breach, and damages, and there was no doubt that the target of plaintiff's breach of contract claim was only AGA.[5]
As the judge correctly observed in ruling on the post-verdict motions, there were interchangeable references to "defendant" and "defendants" throughout the charge. *1160 If the matter was resolvable through simple arithmetic, we could add up all the references to "defendants"[6] and "defendant"[7] and determine whether there were more of the former than the latter. We could also puzzle over what to make of one ambiguous reference.[8] However, the legal question we must decide does not turn on such rigid computations; it depends upon a consideration of the whole charge and calls for the exercise of sound judgment as to the likelihood that some errant misstatements could have caused confusion.
There is no doubt that mistakes were made in the judge's identification of the target of plaintiff's contract claim during the charge and in the verdict sheet. But, again, we do not uphold only the verdicts produced by perfect trials. The question is whether the judge's charge, "considered as a whole, adequately convey[ed] the law and [was] unlikely to confuse or mislead the jury." Fischer, supra, 143 N.J. at 254, 670 A.2d 516. We are convinced that the few references to "defendants" during the course of a charge, which spanned thirty-eight transcript pages and was otherwise unimpeachable, were not capable of generating confusion for a number of reasons.
First, as we have observed, the judge correctly identified the target defendant as often as he misspoke. In many instances, the judge made references to the litigants without referring to their status as either plaintiff or defendant, often just referring in describing the elements of the claim and the facts to be provento "the parties" or "they" or "them." We are satisfied, in closely examining the entirety of the charge and the verdict sheet, that even when mistakenly referring to "defendants," the clear thrust of the judge's directions, in the context of the entire trial, was for the jury to consider whether AGA breached the contract.
In considering the effect of such a misnomer in a charge, we are guided by the Supreme Court's decision in State v. Freeman, 64 N.J. 66, 71, 312 A.2d 143 (1973), where the Court found no reversible error in a judge's imprecise references to "defendant" and "defendants" in his charge in a multiple-defendant criminal case. The Court held that even though "the judge's charge, at times, failed to distinguish explicitly *1161 between separate defendants and separate indictments, thereby creating the potential for uncertainty, we hold that the charge read in its entirety avoided that possibility." Ibid. Other courts have similarly rejected claims of reversible error based on similar mistaken references in jury instructions that were evidently clerical. See, e.g., State v. Silhan, 302 N.C. 223, 275 S.E.2d 450, 474 (1981) (mistaken reference in a charge in a criminal case to "include" instead of "exclude"), abrogated on other grounds, State v. Sanderson, 346 N.C. 669, 488 S.E.2d 133 (1997); Southwest Ice & Dairy Prod. Co. v. Faulkenberry, 203 Okla. 279, 220 P.2d 257, 260-61 (1950) (mistaken reference in the charge to "approximate" instead of "proximate" cause); Olins v. Schocket, 31 Tenn.App. 346, 215 S.W.2d 18, 27 (Tenn.App.1948) (mistaken reference to the wrong individual in identifying the driver in the auto accident in question). Here, in examining the entire jury charge and the verdict sheet, we are satisfied that the jury was not likely misled by a small handful of references to "defendants" and undoubtedly adhered to its obligation to make findings regarding AGA only.
Second, despite the many things counsel found to quarrel about during the course of this trial, we are struck by the fact that not a single discouraging word was uttered with regard to the judge's reference in the verdict sheet to "defendants." Indeed, it is highly probative that although defense counsel objected to certain portions of the verdict sheetincluding, among other things, the verdict sheet's reference to ACCESS and DHC in the first of the three jury questionsshe did not object to the use of the word "defendants." In answering these objections, plaintiff's counsel likewise revealed no concern for the reference to "defendants" in the verdict sheet when he responded, "I think the way it was written was perfect, and it's rare that I say that."
The judge slightly altered the language of the verdict sheet following the parties' arguments about its content. Assuming counsel even noted the mistaken reference to "defendants" in the three questions, not a word was said about it. That lack of objectionor even recognition of the problem speaks volumes regarding AGA's present attempt to convince us that the jury was confused. See Mogull, supra, 162 N.J. at 467, 744 A.2d 1186 (finding the absence of reversible error in a jury verdict sheet when "[t]he court went over the interrogatories word by word in a charge conference that ... lasted an entire afternoon[, and counsel] never objected to them until the post-trial motions"). See also State v. Macon, 57 N.J. 325, 333, 337, 273 A.2d 1 (1971); Fattohi v. Cardner, 318 N.J.Super. 331, 336, 723 A.2d 1004 (App. Div.1999).
Indeed, it is far less speculative to conclude that AGA's counsel may have withheld comment on the use of the word "defendants" in the verdict sheet because that typographical error, if it had any impact, was more likely to prejudice plaintiff. That is, had the jurors adhered to the literal language of the verdict sheetrather than rely on the clear understanding that the only target in this contract dispute was AGAthey would have recognized that the judge may have meant to put plaintiff to the burden of proving not only AGA's liability but the liability of all the other named defendants. In other words, if interpreted literally, the jury verdict sheet required plaintiff to prove not only that AGA breached the contract but that the four individual defendants and other business entities also breached the contract. Considering the jury's rapid return *1162 of a verdict in this case,[9] we conclude that the only rational view of the mistake in the jury verdict sheet is that it either went unnoticed, much as the judge and counsel did not notice the error, or the jury correctly interpreted "defendants" as "defendant."
Third, the jury's failure to pose any question to the judge about the charge or the verdict sheet further persuades us that the jurors were not confused. If the verdict sheet was as erroneous as now asserted by AGA, certainly the jury would have made inquiry. Considering that the jury was informed at the trial's outset that this case was about a contract dispute between two partiesplaintiff and AGAand considering that the judge said the same thing on a number of occasions throughout the charge, any confusion on the jury's part would have undoubtedly generated a question as to what the judge meant by "defendants" in the verdict sheet.
Like the "curious incident" of the dog that did not bark in the night,[10] the silence of counsel and the jury in the face of the verdict sheet's typographical errors precludes the speculative conclusion that the jury was likely confused. If the judge's mistake was truly crippling, the lack of an objection to the form of the verdict sheet in a case where both sides found reasons to object to numerous things both meaningful and trivialis, to say the least, surprising. Considering the focus directed toward the verdict sheet caused by defense counsel's objection to its other aspects, which even led to the judge's detailed description of how he would reword the verdict sheet to satisfy one objection,[11] demonstrates that the mistake was not readily apparent to the most scrutinizing of these interested and motivated readers. Moreover, despite the broad array of relief sought by AGA by way of its post-verdict motion, AGA did not assert that the verdict was imperfect because of the form of the jury verdict sheet. It was only after the judge expressed his own concern about the mistakes in the verdict sheet that resulting jury confusion became a centerpiece of AGA's attack on the verdict.
In short, we do not find persuasive AGA's arguments of jury confusion. At the time the verdict sheet was drafted by the judge, examined by counsel and utilized by the jury, all shared an unspoken understanding that the verdict sheet sought findings regarding only AGA, not all defendants, regardless of the mistaken reference to "defendants." Defense counsel's utter silence regarding the typographical error in the verdict sheet or in the judge's few references to "defendants" in his charge requires application of the plain error standard, which, for the reasons we have expressed, has not been *1163 overcome here. AGA has not demonstrated that the judge's few mistakes in instructing the jury were "clearly capable of producing an unjust result." R. 2:10-2.
For these reasons, we conclude that the judge erred when he held that either the charge or the verdict sheet, viewed separately or together, caused jury confusion. In light of our holding, the predicate upon which rests the issues raised in the cross-appeal no longer exists and, for that reason, we reject the arguments urged by defendants in their cross-appeal. Accordingly, we: (a) reverse paragraph 3 of the order under review that granted a new trial; (b) vacate paragraphs 4 and 5, which described the scope of the retrial and the manner of ascertaining its scope; and (c) remand for the entry of judgment in favor of plaintiff and against AGA in the amount of $8,717,992.
We lastly observe that there may be some continuing uncertainty about the status of plaintiff's noncontract claims. As we noted earlier in this opinion, the judge expressed his view, when ruling on the post-verdict motions, that he had dismissed the misrepresentation claim. However, we are unable to locate any definitive ruling on that point in the trial transcript nor have we found an order in the record on appeal that disposes of these other claims.[12] Accordingly, we remand to the trial judge for the entry of an appropriate order or for the conducting of such further proceedings as may be warranted on the other pleaded claims, including plaintiff's claim for counsel fees, which the judge denied without prejudice pending the retrial that will now not occur.
Reversed in part; vacated in part; and remanded in part. We do not retain jurisdiction.
NOTES
[1] The verdict sheet consisted of the following three questions:

1. Has Plaintiff established by a preponderance of the credible evidence that, in agreeing to have Plaintiff join the medical practice, Defendants agreed to allow Plaintiff to acquire, without further payment therefor, a full share interest in Access and DHC?
2. Has Plaintiff established by a preponderance of the credible evidence that Defendants breached the agreement?
3. What sum of money would fairly and reasonably compensate Plaintiff for the losses that she incurred as a result of the breach of contract by Defendants?
[2] The judge was certainly empowered to question the verdict on grounds other than those raised by the parties. See R. 4:49-1(c).
[3] Paragraph 1 of the order memorializes the judge's denial of defendants' motions for a new trial, judgment n.o.v., and a remittitur; paragraph 2 memorializes the denial of plaintiff's application for the entry of judgment against defendants other than AGA. No party has sought our review of these aspects of the order.
[4] These loose references may well have grown out of the tendency, in lay terms, to think of a professional association, such as AGA, as a group of individuals, hence "defendants."
[5] Despite the indication in his opening comments to the jury that plaintiff had a second claim based upon the alleged misrepresentations of the individual defendants, the judge did not instruct the jury on misrepresentation, the only claim that had targets other than AGA.
[6] I.e., "plaintiff's assertion that the defendants agreed that she would be entitled to acquire a full interest in all of the medical practice, and that the defendants breached that agreement"; "Did it mean, as far as the defendants are concerned, that she was to be offered without any further consideration a full share of AGA"; "if she further has met her burden of proof of satisfying you that the defendants breached the contract"; "Your goal here is to evaluate ... the amount of money that she would have but didn't get as a result of what you would have concluded was the breach by the defendants"; "Has the plaintiff established [that] defendants agreed to allow plaintiff to acquire...." During his charge, the judge also read the verdict sheet, thus adding more references to the "defendants" column of figures.
[7] I.e., "the defendant did not do what the contract called for"; "as a result of the breach by the defendant"; "[t]here is also a dispute ... that language had been agreed to by the defendant ... which the defendant denied"; "[t]he defendant, on the other hand, takes the position that the language did not mean that"; "[t]he next element is the defendant did not do what the contract required, breach"; "[y]our goal is not to punish the defendant."
[8] I.e., "you've got evidence in this case ... with respect to the loss that [plaintiff] asserts she incurred as a result of the defendant's failure to comply with what she says was the agreement." Although the court reporter transcribed "defendant's failure," that is not necessarily what the judge uttered since "defendants' failure" would sound the same as "defendant's failure" to the court reporter who transcribed this statement.
[9] The record reflects that the jury deliberated for approximately ninety minutes in the late afternoon of July 2, 2008, and for approximately ninety minutes the next morning before returning its verdict.
[10] Arthur Conan Doyle, Silver Blaze (1892).
[11] The record suggests that the verdict sheet was subjected to close analysis by the parties. This probing led the judge to describe precisely how he would amend it to satisfy counsel's concerns:

MR. POPLAR: Exactly how are you going to say that, your Honor?
THE COURT: Take your pencil, I'll show you. Go to the verdict sheet.
MR. POPLAR: I have it.
THE COURT: Third line of the first question. Do you see it?
MR. POPLAR: Right.
THE COURT: Strike everything in the third line before the last four words, so that the third line would read only in ACCESS and DHC.
MR. POPLAR: That's fine.
THE COURT: Good. Next question.
[12] In ruling on the post-verdict motions, the judge indicated that he believed he had dismissed the fraud claim prior to charging the jury:

I ruled before we sent the case to the jury, I think I ruled on it at the end of the plaintiff's case or thereabouts, I don't remember exactly, but the record will reflect when I did, but I ruled that the only issue that would go to the jury would be a breach of contract claim against AGA....
The trial transcript, however, does not clearly reflect a dismissal of the misrepresentation claim. Nevertheless, in light of our disposition of the issues before us, we need not definitely decide the question of what became of the misrepresentation claim.