**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1446-23

ANGELA KOUKOUNIAS,

    Plaintiff-Appellant,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Respondent,

and

KEVIN A. CARTER, U-HAUL
TITLING, and LAST MILE
DELIVERIES,

    Defendants.

_____

Submitted January 28, 2025 – Decided March 12, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8432-20.

John R. Moeller, Jr., PC, attorney for appellant (John R. Moeller, Jr., on the briefs).

Flanagan, Barone, & O'Brien, LLC, attorneys for respondent (Michael J. McCaffrey, on the brief).

PER CURIAM

After a jury verdict, plaintiff Angela Koukounias appeals the judgment entered in favor of defendant New Jersey Manufacturer's Insurance Company. The jury concluded plaintiff did not sustain a permanent injury proximately caused by a "phantom vehicle" in a hit-and-run accident. Plaintiff maintains for the first time on appeal the trial court erred: by omitting an ultimate outcome charge; and by failing to inquire about the jury's incomplete verdict sheet prior to issuing supplemental instructions to complete it. Finding no plain error, we affirm.

I.

The parties do not dispute the facts developed at the four-day jury trial conducted in November 2023. We recount the salient facts for context.

On July 24, 2018, plaintiff was traveling in the right lane on Route 1 South when another vehicle on the left merged into her lane. Plaintiff testified that as the other vehicle merged, she was startled, "tooted [her] horn [at the other vehicle] and braked . . . [the] next thing [plaintiff knew], [she] was on the telephone pole."

After summations, the court read the jury charge, which included the following verdict sheet:

1. Was the other driver negligent which negligence was a proximate cause of the accident of July 24, 2018?

YES _____      NO _____  VOTE _____

If your answer to question no. (1) is "no," then cease your deliberations.  If your answer to question no. (1) is "yes," go to question no. (2).

2. Was plaintiff, Angela Koukounias, negligent which negligence was a proximate cause of the accident of July 24, 2018?

YES _____      NO _____  VOTE _____

3. For each of the parties apportion the percentage of negligence that you attribute to each party:

Angela Kokounias         _____%
The other driver         _____%
TOTAL                    100\_\_\_%

If the percentage you attributed to plaintiff, Angela Koukounias, is greater than 50% cease your deliberations and return your verdict.  If not, continue to question no. (4).

4. Has the plaintiff, Angela Koukounias, proven by a preponderance of the objective, credible medical evidence that she sustained a permanent injury that was proximately caused by the accident on July 24, 2018 accident?

YES _____      NO _____  VOTE _____

3

If your answer to question no. (4) is "no," then cease your deliberations. If your answer to question no. (4) is "yes," go to question no. (5).

5. State what sum of money will fairly and reasonably compensate plaintiff, Angela Koukounias, for pain and suffering, disability, impairment and loss of the enjoyment of life, she sustained as a proximate cause of the accident of July 24, 2018?

$_____          VOTE _____

Go to question no. (6).

6. State what sum of money will fairly and reasonably compensate plaintiff, Angela Koukounias, for pain and suffering, disability, impairment and loss of the enjoyment of life, she sustained as a proximate cause of the accident of December 15, 2018?

$_____          VOTE _____

[(Emphasis added).]

Neither party objected to the charge. The jury's written answer to question three on the verdict sheet attributed fifty percent negligence to each party. Despite the instruction at the end of question three directing the jury to proceed to question four if the percentage attributable to plaintiff was not greater than fifty percent, the jury did not proceed with its deliberations to answer the fourth question.

The court and counsel discussed how to address the jury as to the

4

incomplete verdict sheet. Counsel for defendant argued the jury was confused and that the court should inquire into why the jury stopped deliberations and returned a verdict after allocating fifty percent liability to plaintiff on question three. Plaintiff's counsel did not argue for the court to follow-up with the jury about why it did not proceed to question four.

After discussion, the court and counsel agreed the jury should be instructed to proceed to question four based on its fifty-fifty liability apportionment in response to question three. After rereading questions one through three on the verdict sheet, the court instructed the jury as follows:

> So, clearly, in reading your verdict, the percentage attributed to the plaintiff is not greater than [fifty] percent. In fact, it is exactly [fifty] percent. So, based upon that, it would seem to me that the next thing you have to do is answer [q]uestion [four] and that's what is set forth in the instructions for question. . . [n]umber [three] . . . . If not, continue to question [n]umber [four] [which states] has the plaintiff proven by a preponderance of the objective, credible, medical evidence that she sustained a permanent injury that was proximately caused by the accident on July 24[], 2018?
>
> So, that's . . . the next step of this process. So, what I would ask you to do is just continue on, finish up the jury verdict sheet as applicable.

The jury resumed deliberations, and five minutes later returned the verdict sheet unanimously answering "no" to question four, finding plaintiff had not proven

A-1446-23

she sustained a permanent injury proximately caused by the accident.

Plaintiff moved for a new trial, asserting "in light of the considerable confusion . . . the jury was asked to complete deliberations, returning [five] minutes later with an abrupt verdict on damages." On December 1, 2023, the trial court entered judgment in favor of defendant predicated on the jury verdict. The trial court later entered an order denying plaintiff's motion for a new trial pursuant to Rule 4:49-1.

Plaintiff appealed only the December 1, 2023 judgment.

## II.

We defer to the jury's findings, because "[t]he jury's views of the facts and the credibility of the witnesses as expressed in its verdict are entitled to deference from both the trial and appellate courts." He v. Miller, 207 N.J. 230, 251-52 (2011), abrogated in part on other grounds by Cuevas v. Wentworth Grp., 226 N.J. 480, 503 (2016). "A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.'" Cuevas, 226 N.J. at 501 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)).

We generally "apply a narrow scope of review to civil jury verdicts" and "do not set them aside and order a new trial unless there has been a proven manifest injustice." Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super.

6

494, 502 (App. Div. 2017). Where a litigant contests a jury charge, or, by extension, a verdict sheet, we review the charge for harmless error, which is governed by Rule 2:10-2.[1] Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 592 (2015); see also Bolz v. Bolz, 400 N.J. Super. 154, 161-63 (App. Div. 2008) (explaining verdict sheets are considered part of the jury charges).

An error is harmful when it is "clearly capable of producing an unjust result." Est. of Kotsovska by Kotsovska, 221 N.J. at 592 (quoting R. 2:10-2); see also Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) ("An error cannot be harmless if there is some degree of possibility that [the error] led to an unjust result.") (alteration in original) (internal quotation marks omitted).

Plaintiff posits for the first time on appeal that "when confronted with an incomplete verdict sheet the court committed reversible error by failing to ascertain the reason the jury had failed to complete the verdict sheet and curing the problem with a proper supplemental charge." Plaintiff also contends "the

---

[1] Rule 2:10-2 states:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

error . . . was compounded by the court's failure to include an ultimate outcome charge in its instructions to the jury."

After carefully considering plaintiff's arguments under the plain error standard, we affirm.

III.

The purpose of jury instructions, and, by extension, verdict sheets, is "to require the jury to specifically consider the essential issues of the case, to clarify the court's charge to the jury, and to clarify the meaning of the verdict and permit error to be localized." Ponzo v. Pelle, 166 N.J. 481, 490-91 (2001) (quoting Wenner v. McEldowney & Co., 102 N.J. Super. 13, 19 (App. Div. 1968), certif. denied, 52 N.J. 493 (1968)); see also Bolz, 400 N.J. Super. at 161-63 (concluding the verdict sheet's failure to require a discrete mandatory finding on an issue required reversal and a new trial). "In examining whether mistakes made in jury instructions require intervention, a court must determine whether the charge, 'considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" Maleki v. Atl. Gastroenterology Assocs., P.A., 407 N.J. Super. 123, 128 (App. Div. 2009) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)); see also Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (reasoning

8

a jury charge must be read as a whole, not just the challenged portions, to determine its overall effect).

We are unpersuaded by plaintiff's position the trial court committed reversible error through failing to ask the jury the reason it stopped deliberating after answering question three on the verdict sheet. The record establishes both counsel for plaintiff and defendant agreed the jury should have proceeded to answer question four on the verdict sheet since the jury did not allocate more than fifty percent negligence to plaintiff. Plaintiff's counsel even suggested the jury "be reinstructed that they need to move onto [q]uestion [four]." The trial court's subsequent instruction was consistent with plaintiff's request.

The trial court's failure to inquire into the jury's collective mindset does not constitute plain error. The trial court is not under any obligation to "elicit the drift of [a jury's] deliberations." State v. Musa, 222 N.J. 554, 569 (2015). Obtaining any such information from a deliberating jury is improper because of the trial court's duty to "protect the confidentiality of jury communications." State v. Ross, 218 N.J. 130, 147 (2014).

The trial court's supplemental jury charge addressing the verdict sheet also did not prejudice plaintiff or constitute a "clear capacity to bring about an unjust result." State v. Singleton, 211 N.J. 157, 183 (2012). When taking the jury

charges and the verdict sheet together, both "adequately convey[ed] the law." Maleki, 407 N.J. Super. at 128.

To the extent plaintiff now objects to the supplemental instruction, "we defer to the discretion of the trial judge who has the 'feel of the case.'" NuWave Inv. Corp. v. Hyman Beck & Co., 432 N.J. Super. 539, 567 (App. Div. 2013), aff'd, 221 N.J. 495 (2015) (quoting Khan v. Singh, 397 N.J. Super. 184, 202 (App. Div. 2007)). "[W]hen weighing the effectiveness of curative instructions, a reviewing court should give . . . deference to the determination of the trial court," Khan, 397 N.J. Super. at 202-03 (quoting State v. Winter, 96 N.J. 640, 647 (1984)), with "[t]he adequacy of a curative instruction necessarily focus[ing] on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." Winter, 96 N.J. at 647.

The trial court's supplemental instruction properly explained that because the jury found plaintiff's apportionment of negligence was not greater than fifty percent, but fifty percent exactly, it was to proceed to question four in accordance with the instruction on the verdict sheet. Question four required the jury to determine if plaintiff had "proven by a preponderance of the objective, credible, medical evidence" that she sustained injury due to the July 24, 2018 accident. The trial court clarified to the jury that its factfinding on the

10

apportionment of negligence and conclusion that plaintiff's negligence was not greater than fifty percent required it to proceed to damages.  See Ponzo, 166 N.J. at 491.

There is no evidence that inquiry into why the jury stopped deliberating after answering question three would lead to a different outcome in this case. The jury completed the verdict sheet in accordance with the trial court's supplemental charge, finding plaintiff had not established she sustained a permanent injury because of the accident.

We affirm, discerning no error in the procedure employed by the trial court.

IV.

We do not discern plain error in the trial court's purported failure to include an ultimate outcome charge in the initial jury instructions since there was an explanation of the jury's role in the comparative negligence determination on the verdict sheet which was reiterated in the trial court's supplemental instructions.

Roman v. Mitchell controls whether the jury must be instructed, or charged, "as to the legal effect of the application of the [Comparative Negligence Act (CNA), N.J.S.A. 2A:15-5.1 to -5.8] . . . ."  82 N.J. 336, 346-47 (1980).  The

Roman Court reasoned there is nothing in the CNA "which specifically requires that the jury be instructed as to such effect an ultimate outcome charge. All that the statute provides is that the judge shall mold the judgment from the findings of fact made by the jury." Id. at 345; see also N.J.S.A. 2A:15-5.2(d). We acknowledge the Roman Court stated "a jury in a comparative negligence situation should be given an ultimate outcome charge so that its deliberations on percentages of negligence will not be had in a vacuum, or possibly based on a mistaken notion of how the statute operates." Roman, 82 N.J. at 345.

However, we are unconvinced the trial court's failure to read the ultimate outcome charge in this case was plain error, considering the explanation of the verdict sheet in the initial jury charge and the trial court's supplemental charge. The CNA requires the trial court to instruct the factfinder to find "in the form of a percentage . . . each party's negligence or fault," and "the total of all percentages of negligence or fault of all the parties to a suit shall be [one hundred percent]." N.J.S.A. 2A:15-5.2(a)(2). This provision is adequately reflected in the verdict sheet that included a space for the jury to allocate a percentage of negligence to the plaintiff and "the other driver," and also included a line stating the total of those percentages must be one hundred percent. The trial court explained the verdict sheet, as an extension of the charge, during the initial jury

12

instructions. See Bolz, 400 N.J. Super. at 161-63. The supplemental instruction only served to reinforce these instructions.

There is no evidence plaintiff was prejudiced by the failure to read the ultimate outcome charge rather than instructing the jury on the issue through its initial instructions on completing the verdict sheet, which were clarified by the supplemental charge. The jury proceeded to consider the issue of plaintiff's damages after being reinstructed by the trial court, based on only allocating fifty percent fault to plaintiff. Thus, we conclude plaintiff was not prejudiced by the jury instructions and discern no error "possess[ing] a clear capacity to bring about an unjust result." Singleton, 211 N.J. at 182-83.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1446-23